JOHN T. CORRIDAN v. LEO AGRANOFF (ALSO KNOWN AS AGRONOFF).[1]

May 2, 1941.

No. 32,735.

[1]Reported in 297 N. W. 759.

238

*Fletcher, Dorsey, Barker, Colman & Barber* and *Charles F. Noonan,* for appellant.

*Harold J. Carroll, John Kinsella,* and *Harold LeVander,* for respondent.

HOLT, JUSTICE.

About nine o'clock p. m. December 25, 1939, on the way from Faribault to St. Paul, plaintiff's Dodge sedan slued and stalled some 200 feet south of where the highway passes under the "Dan

Patch" railroad. This point is near the northerly limits of the city of Northfield. The highway for a distance of 1,450 feet is straight from there toward Northfield and slopes slightly towards the underpass. The snow had been plowed from the pavement, which was 18 feet wide, and also from about four feet of the shoulders, and was in a ridge or drift two feet high above the plowed portion on either side of the highway. In the car with plaintiff was his wife, who was then driving it, her young sister, and a nurse. Mrs. Corridan made repeated efforts to start the car, which stood at an angle of 45 degrees northeasterly, wholly blocking the east lane of the pavement and extending some three or four feet over the center line. Auto lights were seen coming from Northfield, and plaintiff jumped out of the car to flag the drivers down. He passed to the south of his car some 20 or 30 feet on the west shoulder waving his hat toward the approaching cars. Mr. King, the driver of the first car, saw the stalled car when within 125 feet thereof and applied the brakes. The pavement was icy and slippery, the rear of the car slued to the west, the front struck a rut, the car spun around, stopping against the snowdrift on the east shoulder, the headlights toward Northfield. Defendant had followed King's car from the bridge over the river at Northfield, and, according to his evidence, was about 40 feet behind King at the time the latter's car started sluing. Defendant, however, testified that he did not notice the stalled car until within 30 feet thereof, and then when he tried to apply the brakes the rear of the car slued toward the east so that the right side of defendant's car struck the right side of plaintiff's car, moving it a foot or so and passing it a few feet. In its course defendant's car struck plaintiff, fracturing his leg. Both King and defendant testified that they did not see plaintiff at any time. The testimony agrees that the pavement was icy, rutty, and slippery in places, defendant's witnesses indicating the condition to be worse than described by the plaintiff's. The temperature was mild, near the freezing point. The night was dark, but the visibility was good in that there was no fog or mist.

Plaintiff sued for the personal injuries received. Defendant denied that his negligence caused plaintiff's damage and averred that if damaged plaintiff's negligence contributed to it, and he counterclaimed for damages to his car alleged to have been caused by plaintiff's negligence. The reply denied the allegations of the answer and asserted that if defendant's car was damaged his own negligence caused or proximately contributed thereto. The verdict was for plaintiff. Defendant appeals from the order denying his motion for judgment notwithstanding the verdict or a new trial.

The main contention of defendant is that the record discloses as a matter of law that plaintiff's negligence caused or proximately contributed to the injuries and damage for which he sues, and hence the court erred in denying judgment in favor of defendant notwithstanding the verdict. When the testimony was closed defendant moved for a directed verdict. We conclude that plaintiff's contributory negligence was for the jury. That plaintiff's car stalled, as stated, cannot upon the testimony be attributed to any fault or negligence of his or of his wife. The car was equipped with a standard battery (Willard) used only six months. His wife was an experienced driver. Her repeated attempts to start the car failed. Plaintiff saw the lights of cars coming from Northfield. He testified that he stepped out of his car to flag down the oncoming cars, walked across the pavement back of his car to the west shoulder and south on the shoulder some 20 or 30 feet waving his hat. He could infer that King, the driver of the first car, saw his signal and stopped short of the stalled car. He also testified that when the headlights of defendant's car came straight against him he turned north to escape but was struck down after taking one or two steps. It is to be kept in mind that plaintiff knew his car to be wholly blocking the lane of travel of the approaching cars. The jury could well find that it was plaintiff's first duty to warn the drivers of those cars of the danger, and that the course he took was one which a reasonably prudent person would take under the circumstances. Defendant cites and relies on Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804, and Haeg v. Sprague,

Warner & Co. Inc. 202 Minn. 425, 281 N. W. 261. In the Dragotis case the plaintiff undertook to assist in repairing a flat tire while the car stood in the lane of travel on a dark, rainy night. He knew it would take some time. He stood with his back turned to the lane of travel the car blocked. His flashlight pointed down on the tire they were attempting to remove. We think that was no comparison to the situation which confronted plaintiff in the case at bar. In the Haeg case the plaintiff in broad daylight could observe the defendant's servant coming for quite a distance upon a much traveled highway at great speed toward the right-angle intersection Haeg was about to cross. We think plaintiff's alleged contributory negligence was for the jury, and an examination of these recent decisions lends support to that conclusion, *viz.*, Anderson v. Kelley, 196 Minn. 578, 265 N. W. 821; Allanson v. Ceynar, 203 Minn. 93, 280 N. W. 6; Ralston v. Tomlinson, 207 Minn. 485, 292 N. W. 24. Defendant does not contend that there is no evidence to sustain a finding that defendant's negligence caused plaintiff's injuries and damage. The court did not err in denying defendant's motion for judgment *non obstante.*

Was there error in denying defendant a new trial? The refusal to give defendant's requested instruction II is assigned as error. It is based on the admitted fact that plaintiff walked south on the west instead of the east shoulder in attempting to warn the approaching cars of the situation. The substance is:

"I charge you that this conduct [walking south on the west shoulder] on the part of the plaintiff was negligence unless you find from all of the evidence in the case that it was excusable or justifiable under all of the circumstances then existing. I further charge you that the burden of proving excuse or justification is upon the plaintiff, Corridan."

Even if plaintiff walked on the forbidden side of the road, it was only *prima facie* negligence; but we think the court rightly gave the jury the statutory definition of a roadway as "that part of a

highway improved, designed, or ordinarily used for vehicular travel," and then correctly charged:

"If you decide that plaintiff, Corridan, was not on the roadway at the time he was injured, but was on the shoulder of the highway, then the law just read to you about pedestrians walking near the left side of the roadway giving way to oncoming traffic does not apply to the plaintiff, Corridan."

There was no error in refusing to give defendant's requested instruction.

The only assignment of error presenting some difficulty is the refusal to give defendant's requested instruction V:

"I charge you that if you find from all the evidence that at the time and place in question the defendant, Agranoff, was suddenly confronted by a peril through no fault of his own and if you find that in his attempt to escape or to avoid this peril did not choose the best or the safest way, you should not find that he was negligent because of such choice unless you also find that the choice he made was so hazardous that the ordinarily prudent person would [not] have made it under similar conditions."

If defendant was entitled to an instruction in respect to a sudden peril so was plaintiff. The stalling of his car on the pavement in the lane of the fast approaching cars presented a sudden peril to his passengers and his car through no fault of his. The same was also true of defendant's sudden peril from the stalled car, but with this difference, that there is no evidence which would justify the jury in finding that plaintiff or his wife was negligent or to blame for the situation of the car. There was evidence from which the jury could find that defendant's negligence in respect to speed, his closeness to the King car ahead, under the slippery road conditions, contributed to make the stalled car a sudden peril to him. Even if the instruction was not accurately framed so as to apply to both parties, each asserting a cause of action against the other from the one accident, the trial court's attention was

called to the fact that there was a claim of sudden emergency to be considered by the jury, and if failure to give a proper rule for the jury's guidance was prejudicial to defendant there should be a new trial. The court clearly stated the law to the jury as to the claims of each party with regard to the negligence and contributory negligence charged by each against the other, and that the negligence charged and found would have to be a proximate cause of the damage or injury. The jury were charged:

"What constitutes ordinary or reasonable care depends upon the circumstances of each particular case. It must be in proportion to the danger known or reasonably to be apprehended. It must be measured according to the risks or dangers of every particular situation. The greater the danger, the greater care must be required. The care must be what a reasonable man, taking into view the common course of things, would deem to be required in the particular case."

It seems to us that this was as helpful a rule as could be given under the circumstances. Moreover, the evidence is persuasive that when defendant saw the stalled car and applied the brakes he had thereafter no control of the car whatever. He had then no choice of action, nor did he make any. Even had he seen plaintiff at the time he saw his car he could not have changed the course he was going. We cannot see that defendant was prejudiced by the omission to inform the jury of the emergency rule.

Error is also assigned on the refusal to give defendant's requested instruction No. VI. The first part of the instruction is unobjectionable, to the effect that each party to the action had the right to act on the assumption that the other would exercise due care in the operation of his own car. Then it reads:

"This rule would have no application, however, to the plaintiff, Corridan, if you should find from all of the evidence that the plaintiff knew or should have known that even the greatest exercise of care on the part of the defendant might not have prevented injury. I charge you that it was not due care on the part of the

plaintiff, Corridan, to depend upon the exercise of care by the defendant, Agranoff, if you should find that such reliance was at the time and place in question accompanied by obvious danger to the plaintiff."

Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804, is cited. The language of this court was *arguendo* to show that there was in that case contributory negligence as a matter of law. It was not used with a view to formulate an instruction to a jury. It certainly cannot be said that plaintiff by walking south on the west shoulder of this highway exposed himself to obvious danger from cars moving toward him on the east lane of the highway. The instruction was not applicable to the facts disclosed by the evidence.

The order is affirmed.

LORING, JUSTICE (dissenting).

I am convinced that reasonable minds must conclude that plaintiff was guilty of contributory negligence. When his car stalled and skidded it stood in a diagonal position across the east lane of the slippery 18-foot pavement and extended three to four feet onto the west lane. This left only nine feet of pavement and cleared shoulder for a car to pass on the west. The pavement was so slippery that when King sought to stop his car it went into a whirling skid and turned end for end facing south toward defendant's approaching car, which had been following the King car. The King car stood partly on the east shoulder. Plaintiff saw the King car skid as it stopped. He walked toward it to get help with his own car. To get help to start his car was his sole purpose in getting out to stop cars. He saw defendant's car approaching from behind the King car at a distance which he conceded to be about 350 feet and, as he thought, at about 35 miles an hour. To avoid colliding with the King car, it was headed directly toward him. He knew the pavement was slippery, and of course he knew that defendant's car was likely to skid and go out of control if defendant attempted to stop. Likewise, he could see that a car must use part of the shoulder upon which he was walk-

ing if it was to pass his car. Nevertheless, he stood his ground on the shoulder flagging with his hat. Not only that, but when the car was coming directly toward him he deliberately turned his back toward it and walked north until he was struck by defendant's skidding car. He made no effort whatever to get out of its path. His explanation of his reckless conduct was that "a man has his rights." To me this demonstrates a stubborn indifference to the obvious threat that the laws of man must yield to the laws of physics—that the icy road very probably would put the approaching car into a whirling skid which spelled imminent danger to plaintiff.

The doctrine of contributory negligence may be a harsh rule, but it is for the legislature to repeal, not for the courts. In this case, even if the rule of comparative negligence prevailed, plaintiff's negligence was so gross as compared with defendant's conduct that there should be no recovery.

■ I am not in accord with the majority in its comments in excusing the ruling of the trial court in refusing to charge on the theory of emergency or sudden peril. The request is quoted in the majority opinion and is in complete accord with the law as frequently laid down by this court. Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861; Anderson v. Kelley, 196 Minn. 578, 265 N. W. 821. As said in Restatement, Torts, by the American Law Institute, § 296:

"In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action.

"*Comment:*

"*a.* The rule stated in this Section is applicable where the sudden emergency is created in any way other than by the actor's own tortious conduct, as where it is created by the unexpected operation of a natural force or by the innocent or wrongful act of a

third person. The fact that the emergency is created by the actor's own conduct does not prevent the rule from being applicable if his conduct is not tortious."

If the defendant was not confronted by a sudden emergency when he came upon the situation which resulted in the plaintiff's injury, it is very difficult to imagine an emergency for an automobile driver. Viken v. Dickson, 172 Minn. 1, 214 N. W. 471; Sathrum v. Lee, 180 Minn. 163, 230 N. W. 580. The car immediately ahead of the defendant had gone into a whirling skid on the icy pavement and had turned end for end and, with its driving lights on, was facing toward the defendant, partly upon the pavement, partly upon the east shoulder. Apparently defendant was not going so fast but that he easily avoided a collision with the King car. Some 40 or 50 feet beyond the King car was the plaintiff's car, occupying not only the east or right-hand side of the pavement but three or four feet of the west lane, leaving only the narrow strip of pavement plus the cleared part of the shoulder on which to pass. . Defendant was then compelled either to run into the snowbank on one side or the other of the road or take the left shoulder and narrow strip of pavement on the west side of the road not occupied by the plaintiff's car, all of this being complicated by the ice on the pavement. Doubtless, he might have run his car into a snowbank with the risk of piling up in the ditch, but the presence of the King car restrained the attempt on his right. He could have well chosen the route which he did since he did not see plaintiff in his gray coat against the dirty snow. It was unfortunate for the plaintiff that defendant kept to the road, because, as stated by the majority, defendant's car went out of control and into a whirling skid in which the rear end hit plaintiff's car and the front evidently hit the plaintiff. It seems to me that the defendant was entitled to the instruction requested. The majority opinion assumes that the defendant was negligent as a matter of law and that as a matter of law he created the sudden peril by the manner of his approach to the scene of the accident.

The evidence does not justify such a position. Neither does it justify the assumption that as a matter of law plaintiff was free from contributory negligence. The refused instruction proposed to submit to the jury the question whether defendant was confronted with sudden peril for which he was not to blame. The sudden peril was obvious; to refuse the instruction was to hold as a matter of law that defendant was negligent in his approach and that his negligence created the sudden peril. The evidence would have justified, if it did not compel, a finding that defendant did nothing tortious to create the emergency.

The implication to be drawn from the opinion of the majority is that because, in their opinion, the plaintiff was also entitled to an instruction on the theory of sudden peril, it was not error to refuse to give the defendant's request. It is indeed a novel suggestion that a party, in order to get an instruction according to his theory of the evidence, must also propose an instruction in behalf of his opponent on a theory diametrically opposed to his own case. On defendant's theory of the evidence the jury might well have found that plaintiff was guilty of contributory negligence and that he created such peril as he was in by walking into and remaining in the only path on which the defendant's car could pass on the road. There was evidence tending to support such a finding.

Plaintiff was not confronted by sudden peril. He deliberately concluded to stop cars to get help. He saw the two cars coming, saw the King car make its whirling skid to a stop, and saw the defendant's car approaching at a distance which he estimated at 350 feet. If there was peril to him he created it by getting into the lane where defendant must pass or stop.

The fact that the defendant upon his theory of the case did not request that the rule be applied to both parties does not, in my opinion, correct the error in refusing to give the instruction. If the defendant was entitled to it as to his own conduct, his request was adequate; and, if the plaintiff thought he was also entitled to such an instruction as applied to his conduct, it would have been

his duty to make a like request. It was defendant's theory of the case that plaintiff was guilty of contributory negligence and that he conducted himself as no prudent man would in the face of peril. By implication, at least, the majority hold that in order for defendant to have the benefit of the sudden peril rule he must request a charge favorable to plaintiff and contrary to his theory of the evidence.

The majority opinion is also pregnant with the implication that unless the plaintiff was to blame for creating the sudden peril the rule does not apply to defendant's conduct. This is, indeed, a novel suggestion in the law of negligence, wholly unsupported by the authorities which all support the rule laid down by the Law Institute's Restatement. It must be remembered that we are measuring the defendant's conduct by the circumstances as they appeared to him. Unless he tortiously created the sudden peril with which he was confronted, he was entitled to the instruction, and the instruction was so properly qualified. The evidence of defendant's negligence is very slight, if any. His speed was not so excessive that he had any difficulty in avoiding a collision with the car immediately ahead of him when it went into its whirling skid and finally stopped, facing him. On the plaintiff's own evidence, defendant was not following too close behind the King car. The only evidence justifying a finding of negligence was that he did not slow down sooner. Had he not put on his brakes it is quite likely that he would have passed the stalled car without difficulty had plaintiff not been in the way.

I cannot agree that the court was justified in refusing to charge on the theory of sudden peril because he gave the usual instructions in regard to negligence and contributory negligence. It is true that the doctrine of sudden peril is a refinement of the general rules applicable to negligence, but it is a well established and distinct doctrine on which a party is entitled to have the jury properly instructed when the facts justify it. It occurs to me that the discussion in the majority opinion in regard to this rule

tends to confuse rather than to clarify the law of sudden peril. Up to the present, that law is very clearly defined in this state, and neither counsel nor trial courts have difficulty in determining what it is. I fear that if the majority opinion becomes the law neither counsel nor trial courts will know when or how to apply the doctrine.

In my opinion the defendant was entitled to a directed verdict on account of the plaintiff's contributory negligence, and, if not that, to a new trial on the ground that the court committed prejudicial error in refusing the instruction which I have discussed.

STONE, JUSTICE (dissenting).

I concur in the opinion of Mr. Justice Loring.

