WAYNE LeCLAIR AND HIS MOTHER AND NATURAL
GUARDIAN, PHYLLIS MAXEY, v. WALLACE SICKLER.

146 N. W. (2d) 853.

December 2, 1966—No. 40,052.

*Raymond J. Kempe,* for appellants.

*King, MacGregor & Lommen* and *Maurice H. Rieke,* for respondent.

NELSON, JUSTICE.

Appeal from an order denying plaintiffs' motion for judgment notwithstanding the verdict or a new trial in this action to recover damages for injuries sustained by plaintiff Wayne LeClair when he was struck by defendant's automobile. The trial of the action resulted in a jury verdict for the defendant.

Plaintiff LeClair, an 18-year-old high school graduate, left his home on Lund Avenue in Spring Lake Park at 6:15 a. m. December 5, 1963, and walked one block to the corner of 84th Avenue and Terrace Road where he had, for the past 6 months, been given a ride to work by a neighbor, Al Miller, who lived on 84th Avenue. Since it was a cold and windy morning plaintiff, after waiting only for minutes, began walking slowly toward the south on the west shoulder of the roadway of Terrace Road.

Terrace Road, which has two lanes of travel, runs in a north and south direction and Ballantine Lane runs into Terrace Road from the east where it ends at the intersection. Across from Ballantine Lane, on the west side of Terrace Road, is a private driveway. According to plaintiff, after reaching the intersection he took up a position on the west side of the road in the middle of the private driveway, about 3 feet from the edge of Terrace Road, and stood facing south. A few minutes later he was struck from behind by defendant's car and seriously injured. Since

plaintiff was facing south, he did not see defendant's automobile approach.

Defendant claims that his car was never off the tarvia portion of Terrace Road and that plaintiff must have been on the traveled part of it when struck. Defendant testified that he left his home about 6:30 a. m. the morning of the accident. His car had been left outside overnight and when he backed out of the driveway to proceed south on Terrace Road he turned on the defrosters and headlights. He denied, however, that any frost had accumulated on his windshield. He testified that upon reaching the intersection of Terrace Road and Ballantine Lane he passed an oncoming car and while passing heard a thump and a bang on the windshield of his car. He said that he did not recognize that he had struck a person until he had come to a gradual stop and looked out of the rear window. According to his testimony, he did not know what actually happened except that something came over the hood of his car causing a break in the windshield. Defendant then backed up his car and immediately asked a neighbor to call the police ambulance. Later examination showed that the front windshield on his car had been broken on the right-hand side, the break leaving a hole about 6 inches in diameter.

Defendant further testified that his headlights were on low beam as he approached the intersection and that the oncoming car also had its lights on low beam; that he was not blinded by the lights of the oncoming car; and that there was more than enough room on the paved portion of Terrace Road for vehicles traveling in opposite directions to pass in safety. He admitted that he was driving more toward the right because of the oncoming car but denied that his car was off the tarvia portion of the road. He said that he did not see plaintiff at any time before the impact or even at the time it happened.

Defendant testified that his car was traveling only 25 to 30 miles per hour upon approaching the intersection and that he had not reduced his speed when the accident occurred. He had no explanation why he did not see plaintiff, except that he met the oncoming car. The intersection was illuminated at the time by a 10,000-lumen street light mounted on a pole 26 feet high located on the west side of Terrace Road opposite Ballan-

tine Lane. Defendant was familiar with Terrace Road and the intersection and admitted that there were no buildings, parked cars, or other objects close to the roadway that in any way obstructed his view as he proceeded into the intersection.

Police Officer John F. Anderson, who received the call from the Fridley police station, appeared as a witness for plaintiffs and testified that upon his arrival at the accident scene a few minutes later he observed plaintiff LeClair lying on the grass perpendicular to the roadway and rendered first aid to him. The officer observed sandwiches lying on the grass 8 to 10 feet from the edge of Terrace Road; eyeglasses 2 to 3 feet from the edge of the street; and a shoe north of the eyeglasses and 2 or 3 feet from the edge of the street. He further testified that he heard defendant admit he was traveling 40 to 45 miles per hour when approaching the intersection.

Police Officer Joseph Wesley of Spring Lake Park also appeared as a witness for plaintiffs. He testified that upon arriving at the accident scene at 6:39 a. m. he observed a '61 Studebaker Lark automobile pointing south; that its windshield was broken at the extreme right side; and that its windows were 90-percent frosted. His testimony corroborated that of Officer Anderson with respect to the location of plaintiff's body, the sandwiches, and the shoe. He also said that defendant upon questioning had said he did not see the boy he struck, did not even know he hit him, and had been blinded by the lights of an oncoming car. The officer also testified that the defendant's car had come to a stop opposite a telephone pole and that there were no skid marks but that defendant was vague as to the speed he was going at the time of the accident, suggesting that it might have been 40, 45, or 35 miles per hour. This officer further testified that at the point where the defendant's car came to a stop one tire was on the shoulder of the road.

Plaintiffs contend that the trial court erred in allowing defendant's counsel to state in his opening statement to the jury that the defendant was not negligent because he had not been issued a ticket for any traffic violation and in allowing defendant to testify on direct examination that the police officers did not issue a ticket to him for any traffic violation; in

reading to the jury in his instructions Minn. St. 169.21, subd. 5,[1] when there was no evidence in the record that plaintiff was walking in the street and in refusing to give a requested instruction concerning this statute as set out in Corridan v. Agranoff, 210 Minn. 237, 297 N. W. 759; in prohibiting counsel from cross-examining defendant as to whether he observed plaintiff at various distances beginning 100 feet away from the point of impact and leading up to the point of impact; in refusing to give a requested instruction on reduced speed; and in requiring one of the police officers during cross-examination to testify, over objection, from the accident report to something that he did not observe.

■ Plaintiffs complain that defendant's counsel deliberately emphasized to the jury, with the court's assistance, the fact that the police officers did not issue a traffic ticket to defendant while at the accident scene and thereby sought to imply that defendant was not negligent or at fault in causing the accident. They contend that this procedure is in violation of § 169.94, which provides:

"Subdivision 1.  No record of the conviction of any person for any violation of this chapter shall be admissible as evidence in any court in any civil action.

"Subd. 2.  The conviction of a person upon a charge of violating any provision of this chapter or other traffic regulation less than a felony shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding."

We cannot see that this statute forbids what occurred at the trial. Defendant's counsel inquired on direct examination of defendant whether the police officers who investigated the accident had issued a ticket to him for a traffic violation. The inquiry necessarily arose out of the testimony of the officers that defendant had said at the scene of the accident that he had approached the intersection at a speed of 35, 40, and 45 miles

---

[1]Minn. St. 169.21, subd. 5, provides: "Pedestrians when walking along a roadway shall walk near the left side of the roadway giving way to oncoming traffic. Where sidewalks are provided and usable it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."

per hour. Had the officers said that defendant maintained during the investigation, as he did when testifying at the trial, that his speed did not exceed 25 to 30 miles an hour, the question might have been objectionable in the court's discretion. But when the officers testified that defendant admitted driving at a speed violating statutory speed restrictions, we think it was equally within the court's discretion to permit evidence that he had not been charged with a traffic violation. It might well under the circumstances have been an abuse of discretion on the part of the trial court to rule otherwise. Section 169.94 has simply erected a bar against what prior thereto had been admissible in evidence and must be so construed as to render effective the intent of the legislature. The leading case construing § 169.94 is Warren v. Marsh, 215 Minn. 615, 11 N. W. (2d) 528, which held that an oral plea of guilty to a violation of the State Highway Traffic Regulation Act is not admissible as evidence in a civil action. See, also, Souden v. Johnson, 267 Minn. 151, 125 N. W. (2d) 742. These cases do not suggest that the statute precludes a party from showing that he has not been charged with, or convicted of, a traffic violation.

The trial court took the view, in a memorandum accompanying its denial of the motion for judgment notwithstanding the verdict or a new trial, that the indication by the officers that defendant had admitted to a violation of the traffic laws gave rise to an inference, at least, that defendant had been arrested by them in the ordinary course of law enforcement and that under these circumstances no prejudice could come from allowing the actual fact of no arrest to be given to the jury to offset the categorical accusation of a statutory violation.

It is clear that § 169.94 precludes merely the introduction of the fact of a conviction of a traffic violation and does not prohibit the introduction of evidence showing that no tickets were issued. When, as the officer testified, an unequivocal admission is made by a wrongdoer in the presence of and to the officer, the normal procedure would be for a ticket to be issued or a complaint to be issued if the officer is carrying out his duty as a public official. We agree with the trial court that, to offset and impeach such testimony, the alleged wrongdoer should have the opportunity to show that the officer did not issue a ticket to make an

arrest. As the trial court suggested, the other party would have the right, of course, to call the officer in rebuttal to explain why a ticket was not issued.

In support of his position plaintiffs' counsel cites the following cases from other jurisdictions: Thornsbury v. Thornsbury, 147 W. Va. 771, 131 S. E. (2d) 713, and Danner v. Walters, 154 Neb. 506, 48 N. W. (2d) 635. They are not in point. It is quite obvious from a reading of the Thornsbury case that West Virginia has no statute similar to § 169.94 since the court there stated (147 W. Va. 785, 131 S. E. [2d] 722):

"A plea of guilty by a driver to a charge of a traffic violation in connection with the accident involved in the civil action for damages may be admissible as an admission."

In the Danner case we again find a situation entirely different from that in the case at bar. In this case the investigating officer, without objection, testified that there was nothing to indicate a violation on the part of the truckdriver involved. The question in that case called for a conclusion of the officer as to whether or not, in his opinion, the driver had violated any laws. In the instant case we have the police officers testifying that defendant admitted to one of them, in the presence of both, that he was exceeding the speed limit. Defendant, of course, contends that the purpose of asking him whether he had been issued a ticket was merely to test the trustworthiness of the officers as witnesses by ascertaining whether they had performed their official duty by issuing a traffic ticket if there were an admitted violation of the statute. Under the circumstances we have a situation here vastly different from that presented in either the Thornsbury or Danner cases. Thus we must hold that on the facts here the court did not err in permitting defendant to testify that he had not been charged with violation of the speed statute.

■ Plaintiffs' contention that the trial court erred in reading to the jury in his instructions § 169.21, subd. 5, and in refusing to give their requested instruction concerning § 169.21, subd. 5, set out in Corridan v. Agranoff, *supra,* must be rejected since upon the evidence before it the jury could have found that the accident occurred while plaintiff was

walking on the roadway. If so, then his failure to observe the provisions of § 169.21, subd. 5, would have been a direct cause of the accident. If the jury found that plaintiff was walking on the shoulder of the road or was off the road at the time of the accident, then § 169.21, subd. 5, would not apply since defendant's negligence in leaving the roadway would have been the direct cause of the accident. What actually occurred was for the jury to decide. We think it fair to conclude, as did the trial court, that the jury found that the accident occurred on the roadway and, therefore, that defendant was either not guilty of negligence directly causing the accident or that plaintiff was contributorily negligent.

We see no merit in plaintiffs' contention that the trial court erred in failing to give the jury § 169.14, subd. 3, which provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection, * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

The trial court read to the jury § 169.14, subd. 1, which provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

He also instructed the jury that under § 169.14, subd. 2, speed is restricted to 30 miles an hour in any municipality and that such speed limit is absolute and any speed in excess thereof is unlawful. Upon the state of the record the instructions, which by including § 169.14, subds. 1 and 2, cover the basic rule with respect to speed and the absolute speed limit involved in this case, were sufficient and proper on the issue of speed. We conclude that we can see no prejudicial error in the instructions of the trial court when considered as a whole.

Plaintiffs contend also that they had the right to cross-examine defendant as to whether he observed plaintiff LeClair at various distances

beginning 100 feet away from the point of impact and leading up to that point, in order to show negligent lookout and that defendant was driving with defective headlights in violation of § 169.60. The record is clear, however, that defendant testified that he did not see plaintiff before the collision. There is no testimony to the contrary, so any questions directed to defendant as to his observation of plaintiff at various distances would be without foundation and purely argumentative. Such cross-examination on that issue was therefore properly refused.

The other contentions of plaintiffs are without merit and need no further comment. The jury rendered a verdict for defendant after considering the versions of the parties. These were in sharp contrast and the issues presented may well have resolved themselves into a question of the credibility of witnesses. The conflicts in the evidence were for the jury to resolve and there is sufficient evidence to support the verdict. The trial judge who determined the course of the trial below has concluded that the evidence justified it and that plaintiffs have not been prejudiced to the extent of entitling them to judgment notwithstanding or a new trial because of any errors of law committed at the trial. After a careful consideration of the entire record and the instructions given to the jury, we agree with the trial court.

Affirmed.