Douglas P. KRUEGER, Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY, et al., Respondents.

No. C1–93–928.

Court of Appeals of Minnesota.

Dec. 28, 1993.

James R. Anderson, Marshall, for appellant.

Tony R. Krall and Margaret K. Ackerman, Hanson Lulic & Krall, Minneapolis, for respondents.

Considered and decided by ANDERSON, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

ANDERSON, Chief Judge.

Douglas Krueger appeals from a judgment against him on his claim for the proceeds of a fire insurance policy. Before trial, the court dismissed all of Krueger's claims except for his breach of contract claim and denied respondent's motion to dismiss for insufficient service of process. During trial, the court denied Krueger's motion to elicit evidence of nonprosecution for arson. By directed verdict, the trial court held that the provisions of the Minnesota standard fire insurance policy were incorporated into the policy issued to Krueger and that a provision of the standard policy barred Krueger's claim. We reverse and remand for a new trial.

## FACTS

Douglas Krueger owned and rented a house in Springfield, Minnesota. In the summer of 1988, Krueger asked Jack Baynes, a State Farm[1] agent and employee, for a quote for insurance on the house. Baynes quoted to Krueger an annual premium of $217.58 for coverage to be placed with State Farm Fire and Casualty Company (State Farm Fire). After obtaining a quote of $250 from an agent for a different insurer, Krueger asked Baynes to place the insurance.

Because Krueger's house was built in 1938, it did not meet the underwriting requirements of State Farm Fire. Therefore, Baynes placed the insurance with State Farm General Insurance Company (State Farm General), a State Farm company that underwrites insurance on older houses. The policy period commenced August 8, 1988.

The premium for an older house is normally higher than the premium for a newer house. As a result, in November 1988, Krueger was informed that an additional payment of $54.65 was necessary to keep the State Farm General policy in effect until the renewal date. Krueger paid the additional premium. The billing statements Krueger received from State Farm referred to the policy form numbers and stated that State Farm would provide the coverage described in the policy.

State Farm claims it sent a copy of the State Farm General policy to Baynes, to be forwarded to Krueger. Whether Baynes forwarded the policy to Krueger is not clear from the record. According to an affidavit Baynes submitted in the trial court, a policy

---

1. The State Farm Insurance Group is composed of a number of insurance companies, including respondents State Farm Fire and Casualty Company and State Farm General Insurance Company. Unless otherwise specified, "State Farm," as used in this opinion, refers to the State Farm Insurance Group collectively.

was issued by State Farm General to Krueger; the affidavit does not specify whether the policy was sent directly to Krueger, or to Baynes to forward to Krueger. Krueger denies ever receiving the policy.

After this litigation was commenced, State Farm General produced a certified copy of the policy it issued. That policy contains a 30–day vacancy/vandalism clause, which provides that property loss caused by vandalism and malicious mischief is not covered by the insurance if the house had been vacant for more than 30 consecutive days immediately before the loss.

In addition, State Farm General contends the 60–day vacancy/unoccupancy clause of the Minnesota standard fire insurance policy is a mandatory statutory provision which must be read into its policy. This clause provides that, unless otherwise provided in writing, an insurance company shall not be liable for loss occurring while the described premises are vacant or unoccupied beyond a period of 60 consecutive days. Minn.Stat. § 65A.01, subd. 3 (1988). The policy State Farm General issued does not contain the language from the statute.

Krueger's house was occupied by renters until November 1988. After November 1988, nobody lived in the house. Krueger stored personal property at the house and continued to perform routine maintenance on it, in addition to preparing the house for sale.

On May 23, 1989, the house was substantially damaged by fire. Krueger had been patching walls, painting and looking for a plumbing leak in the house earlier that same day. He left the house approximately five hours before the fire was discovered. State Fire Marshal Harold Hustad and a private investigator retained by State Farm concluded the cause of the fire was incendiary in nature. When Krueger sought payment for his loss, State Farm advised him that it believed the fire was "intentionally set within [his] knowledge or control" and denied his claim. State Farm also reserved all other defenses. Krueger sued State Farm to recover the proceeds of the policy.

Krueger served the summons and complaint personally on Baynes. Krueger sent a copy of the summons and complaint to State Farm Fire and State Farm General by regular mail; no acknowledgment of service was included. In addition, Krueger forwarded a copy of the summons and complaint to the Ramsey County sheriff, requesting that the summons and complaint be served on the Commissioner of Commerce. The sheriff did not serve the summons and complaint on the commissioner, but mailed the commissioner a copy. Krueger also mailed copies of his summons and complaint to State Farm Fire and State Farm General by certified mail.

State Farm General and State Farm Fire moved for dismissal, asserting insufficient service of process pursuant to Minn.R.Civ.P. 4.05. Krueger responded that service was effective under Minn.Stat. § 45.028 (1988). On Friday, December 13, 1991, State Farm Fire and State Farm General responded to Krueger's claim that he effected service pursuant to section 45.028. The following Monday, the trial court denied the motion to dismiss without noting whether it had received and considered the response to Krueger's claim of effective service under section 45.028. No memorandum accompanied the order.

In his complaint, Krueger alleged that State Farm and Baynes violated a provision of the Deceptive Trade Practices Act. *See* Minn.Stat. § 325D.44, subd. 1(2) (1988). Krueger claimed that Baynes and State Farm caused a likelihood of confusion as to the source of goods or services by telling him the insurance on his house would be provided by State Farm Fire and then placing the insurance with State Farm General. In a pretrial order, the trial court granted Baynes and State Farm summary judgment on the claim of deceptive trade practices, finding no evidence that Baynes or State Farm engaged in any of the practices set forth in section 325D.44. In that order, the court dismissed all of Krueger's other claims except his claim for breach of contract. On the first day of trial, the court ordered Baynes and State Farm Fire dismissed as defendants, concluding the breach of contract claim was only against State Farm General.

At trial, the state fire marshal testified regarding the basis for concluding that the

fire was incendiary in nature. Betty Rogers, a chemist for the Bureau of Criminal Apprehension, was to be questioned as to her testing of certain samples taken from the fire scene, but did not testify at trial. The trial court did not permit Krueger to elicit testimony that he was not criminally charged with arson.

At the close of Krueger's case, State Farm General moved for a directed verdict based on the 60–day vacancy/unoccupancy language of section 65A.01, subdivision 3. When hearing the directed verdict motion, the trial court stated that if Krueger did not receive a copy of the State Farm General policy, he was bound by the 60–day vacancy/unoccupancy clause found in the standard fire insurance policy. The court also stated that, if Krueger did receive a copy of the State Farm General policy, he would be bound by the 30–day vacancy/vandalism clause in the State Farm General policy. The court ultimately directed a verdict in favor of State Farm General based only on the 60–day vacancy/unoccupancy provision of the standard fire insurance policy. Krueger has appealed, and State Farm has filed a notice of review.

### ISSUES

I. Did the trial court err in directing a verdict on the 60–day vacancy/unoccupancy clause?

II. Is the 30–day vacancy/vandalism clause found in State Farm General's policy applicable to the present case?

III. Did the trial court abuse its discretion in excluding evidence that Krueger was not criminally charged with arson?

IV. Did the trial court err in granting summary judgment to State Farm on Krueger's claim of deceptive trade practices?

V. Is Krueger's suit barred for failure to effect service of process within the two-year limitations period?

### ANALYSIS

#### I. *Directed Verdict*

▪▪▪ In reviewing a directed verdict, the appellate court must consider whether, viewing the evidence as a whole, different persons could reasonably reach different conclusions. *Dvoracek v. Gillies,* 363 N.W.2d 99, 101 (Minn.App.1985). The court must make "an independent determination of the sufficiency of the evidence to present a fact question to the jury." *Willmar Poultry Co. v. Carus Chem. Co.,* 378 N.W.2d 830, 835 (Minn.App. 1985), *pet. for rev. denied* (Minn. Feb. 14 & Feb. 19, 1986).

▪▪▪ State Farm contends that because Krueger did not provide a transcript, this court cannot review his claim that the trial court erred in directing a verdict. Generally, when the error alleged on appeal is the trial court's directing a verdict, the record must contain all of the evidence. *Klein v. Funk,* 82 Minn. 3, 8–9, 84 N.W. 460, 462 (1900). In such instances, in the absence of a showing that the record on appeal contains all of the evidence introduced at trial, the trial court's action in directing a verdict is not reviewable. *Board of Trustees of Ripon College v. Brown,* 66 Minn. 179, 181, 68 N.W. 837, 838 (1896).

▪▪▪ If Krueger had challenged the trial court's directed verdict by arguing the house was not vacant for more than 60 consecutive days prior to the fire, that issue would not be reviewable. But the question here is whether the trial court erred in holding the 60–day vacancy/unoccupancy clause contained in the standard fire insurance policy governs the coverage of Krueger's policy. Resolution of this issue requires interpretation of statutory and policy language, questions of law which this court reviews de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985); *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978). Accordingly, the complete trial transcript is not necessary for our review.

▪▪▪ In granting a directed verdict, the trial court concluded that the standard policy's language controls all coverage that State Farm General's policy may have afforded Krueger. *See* Minn.Stat. § 65A.01, subd. 3 (1988). We disagree and conclude the statute is intended to protect insureds from unexpected limitations on coverage provided by fire insurance policies. *Heim v. American Alliance Ins. Co. of N.Y.,* 147 Minn. 283, 287,

180 N.W. 225, 226 (1920). In construing the statute as it then existed, the *Heim* court stated:

> The statute is founded on public policy. It was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection that he might naturally suppose he was getting under his contract. * * * The statute is a remedial one, and, therefore, it is to be construed liberally for the suppression of the mischief it was designed to do away with; it was enacted to promote beneficial public objects and, therefore, a broad construction is to be given to it.

*Id.* at 287–88, 180 N.W. at 226–27.

State Farm General's policy, which provides coverage against loss by fire, is subject to the statute. *See Fireman's Fund Ins. Co. v. Vermes Credit Jewelry,* 185 F.2d 142, 145 (8th Cir.1950) (statute covers any insurance contract providing coverage against loss by fire). But the State Farm General policy is not limited by the statute's minimum coverage provisions.

■ An insurance policy is a contract, and, in the absence of any legal prohibition or restriction, the parties are free to contract as they see fit. *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The law writes insurance statutes into policies. 43 Am.Jur.2d *Insurance* § 302 (1982); *American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 521 (Iowa 1985); *see also Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 275 (Minn.1985) (where insurance policy provision directly conflicts with statute, policy's conformity clause substitutes statutory provision for policy provision). But, a fire policy can include broader coverage than the minimum requirements of the statute. *See Schmidt v. St. Paul Fire & Marine Ins. Co.,* 376 N.W.2d 237 (Minn.App. 1985), *overruled on other grounds by* 505 N.W.2d 54 (Minn.1993). State Farm does not dispute that it issued a policy that was in force at the time of the fire. It is the terms of that policy that determine the rights and liabilities of the parties. *Bobich,* 258 Minn. at 294, 104 N.W.2d at 24.

■ Because there was a policy in effect, the trial court erred in using the statute to determine the extent of Krueger's coverage. By using the standard policy against the insured to impose a vacancy clause not found in the policy, the trial court used the statute as a sword for the insurer, rather than a shield for the insured. This remedial statute guarantees coverage that will supersede any attempt to limit coverage to less than the statutory minimum. But when an insurer has issued a fire insurance policy providing more coverage than the statutory minimum, the insurance contract between the parties determines the extent of the insured's coverage. In this case, it was error to direct a verdict without considering whether the State Farm General policy afforded greater coverage than the minimum coverage required by the standard policy.

## II. *Vandalism Clause*

■ State Farm argues that the trial court erred in refusing to submit to the jury the question of the applicability of a 30–day vacancy/vandalism clause contained in its policy. The procedural posture of this case prevents a decision by this court on whether the trial court should have submitted this question to the jury. This court's review is limited to issues that were considered by the trial court in deciding the matters before it. *Thayer v. American Financial Advisers,* 322 N.W.2d 599, 604 (Minn.1982). Although the trial court indicated it would not submit a question regarding the 30–day vacancy/vandalism clause to the jury, its decision that the statute was controlling rendered a final decision on this issue unnecessary.

By proceeding on the theory that the terms of the policy were irrelevant, the trial court concluded the policy's 30–day vacancy/vandalism clause could not be considered. That theory was erroneous. As we have held, the policy determines the extent of Krueger's coverage. On remand, the trial court must determine whether the 30–day vacancy/vandalism clause applies.

## III. *Evidentiary Ruling*

■ The trial court did not permit Krueger to elicit testimony that he was not

criminally charged with arson. The court concluded that this evidence was irrelevant in a civil case.[2] The question of relevance is left to the sound discretion of the trial court. *Fulsom v. Egner,* 248 Minn. 156, 79 N.W.2d 25 (1956). In exercising its discretion, the court must determine whether the probative value of the proffered evidence outweighs its capacity to mislead or prejudice the trier of fact. *Woodrow v. Tobler,* 269 N.W.2d 910, 915 (Minn.1978); *see also* Minn.R.Evid. 403.

Ordinarily, evidence of arrest, nonprosecution, or acquittal in a criminal proceeding is not admissible in a civil suit arising out of the event that formed the basis of the criminal charges. *Galbraith v. Hartford Fire Ins. Co.,* 464 F.2d 225, 227–28 (3rd Cir.1972). In the federal courts, it is reversible error to permit an insured seeking the proceeds of a fire insurance policy to present evidence of nonprosecution or acquittal on criminal arson charges. *Rabon v. Great Southwest Fire Ins. Co.,* 818 F.2d 306, 309 (4th Cir.1987) (citing *Kelly's Auto Parts, No. 1, Inc. v. Boughton,* 809 F.2d 1247, 1253 (6th Cir.1987); *Goffstein v. State Farm Fire & Cas. Co.,* 764 F.2d 522, 524 (8th Cir.1985); *Galbraith,* 464 F.2d at 227–28). Several reasons support the general rule of law excluding this evidence: (1) it goes to the principal issue before the jury and is highly prejudicial; (2) the burdens of proof in civil and criminal cases are different; and (3) a prosecutor's opinion regarding whether the insured set the fire is inadmissible evidence because it is based on knowledge outside the prosecutor's personal experience. *See Rabon,* 818 F.2d at 309. *See also Chewakin v. St. Vincent,* 275 N.W.2d 300, 301 (N.D.1979); *Anderson v. Saunders,* 16 Wis.2d 55, 113 N.W.2d 831, 832–33 (1962).

This general rule applies to related criminal proceedings with two notable exceptions, (1) assault and battery, and (2) malicious prosecution. *See Weathers v. American Family Mutual Ins. Co.,* 793 F.Supp. 1002, 1015 (D.Kan.1992); *Stein v. Schmitz,*

137 N.J.L. 725, 61 A.2d 260, 262 (N.J.1948). Even then, admissibility of evidence of acquittal on criminal charges in a related civil matter is generally limited. *See McKinney v. Galvin,* 701 F.2d 584, 585–86 (6th Cir.1983) (where plaintiff dismissed claim for malicious prosecution, which would have required proof of favorable disposition, trial court did not abuse its discretion in excluding acquittal of charged offense of DWI and restoration of driving privileges); *Glens Falls Group Ins. Corp. v. Hoium,* 294 Minn. 247, 251, 200 N.W.2d 189, 191–92 (1972) (when defendant pleaded guilty to charge of assault, guilty plea admissible in insurance coverage litigation, but does not collaterally estop claim that injuries to victim were unintentional); *but see The Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968) (murder conviction bars killer's recovery of life insurance covering decedent).

The Minnesota Supreme Court has followed this rule with respect to testimony about the prosecution or nonprosecution of a traffic offense. *Dosh v. Elioff,* 301 Minn. 169, 174–75, 222 N.W.2d 326, 329 (1974). Exceptions to the rule recognized by the court are where such testimony directly impeaches previous evidence of driving misconduct and where the probative value of a full police explanation outweighed the prejudicial impact of the proffered testimony. *See LeClair v. Sickler,* 275 Minn. 320, 325–26, 146 N.W.2d 853, 856–57 (1966) (where police officer stated defendant acknowledged an unlawful speed and defendant stated his speed did not exceed lawful limit, then evidence of nonprosecution was admissible to impeach police officer's credibility); *see also Woodrow,* 269 N.W.2d at 915 (fuller police explanation, including testimony that no ticket was issued, highly relevant to rebut plaintiff's detailed blood test inquiry and its attendant inference that defendant's actions or demeanor prompted an arrest or citation).

The supreme court has held the *LeClair* exception "should be strictly construed to

---

**2.** We recognize that Krueger did not move for a new trial, a prerequisite for review of trial error. *See Sauter v. Wasemiller,* 389 N.W.2d 200, 201 (Minn.1986). We also note that Krueger bases his argument on the testimony of State Fire Marshal Hustad and a representative of the Bureau of Criminal Apprehension, but has failed to provide this court with a record of this testimony. Because this issue has been briefed, we choose to address it at this time.

allow such testimony only where it directly impeaches previous evidence of driving misconduct." *Dosh,* 222 N.W.2d at 329. In distinguishing *Dosh* from *LeClair,* the court held that in most cases, the relevancy of such evidence is substantially outweighed by its prejudicial effect. The court concluded:

> While "relevance" is liberally defined, it would appear that evidence of a decision whether or not to issue a traffic citation does little to further the inquiry, and in fact amounts to only a conclusory opinion, on the issue of negligence. Thus, in most cases this nominal relevance is substantially outweighed by the danger that the jury will be misled and assign undue weight to the evidence.

*Woodrow,* 269 N.W.2d at 915.

▮ Krueger maintains that testimony by fire investigators that the fire was incendiary in nature will be "prejudicial in the extreme." He claims that if he is not permitted to elicit evidence that he will not be prosecuted, the jury will be left with the false impression that he is the subject of an ongoing or unresolved investigation. We disagree.

The facts and circumstances of this case do not fit any of the narrowly-construed exceptions to the general rule excluding evidence of nonprosecution. State Farm is entitled to introduce testimony about the cause of the fire, which in the opinion of the State Fire Marshal was incendiary in nature. Whether the fire was incendiary in nature is directly relevant to the coverage and exclusions in State Farm's policy. Arson by the insured would void the coverage of the State Farm General policy. *See Mickelson v. Homeland Ins. Co.,* 132 F.Supp. 670 (D.Minn.1955), *aff'd.,* 235 F.2d 425 (8th Cir.), *cert. denied,* 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed.2d 119 (1956). The probative value of the evidence of nonprosecution is nominal when weighed against the likelihood the jury will be misled and assign undue weight to it. At its most relevant, testimony of nonprosecution is only opinion which is not based on personal knowledge. We agree with the conclusion of the court in *Galbraith v. Hartford Ins. Co.:*

> At its most relevant, non-prosecution may have meant that the prosecutor had inves-

tigated the facts, considered them and concluded from them that Galbraith had not committed arson. Thus considered, it is apparent that the evidence would have been only an opinion which, moreover, would not have been based on personal knowledge. As such, the evidence would be inadmissible under the opinion rule * * * and the rule requiring that a witness have personal knowledge.

464 F.2d at 227–28 (footnotes and citations omitted).

We conclude that the trial court did not abuse its discretion by excluding evidence of the nonprosecution of Krueger on related criminal arson charges.

## IV. *Deceptive Trade Practices*

▮ Krueger alleges that Baynes' conduct constitutes a deceptive trade practice. *See* Minn.Stat. § 325D.44, subd. 1(2) (1988). Specifically, Krueger claims that by giving a quote for the State Farm Fire policy when State Farm General wrote the policy, Baynes caused confusion about the source of services. We disagree and conclude the trial court properly granted summary judgment on this claim.

The Deceptive Trade Practices Act prohibits people from passing off the goods and services of another as their own and creating confusion as to the origins of the goods. *See Midway Mfg. Co. v. Dirkschneider,* 571 F.Supp. 282, 286 (D.Neb.1983) (construing Nebraska version of Uniform Deceptive Trade Practices Act); *see also Scott v. Mego Int'l, Inc.,* 519 F.Supp. 1118, 1137 (D.Minn. 1981); *State by Andersen v. Reward Corp.,* 482 N.W.2d 815, 820 (Minn.App.1992), *pet. for rev. denied* (Minn. May 15, 1992). Krueger's claim that Baynes confused him regarding which State Farm insurance company insured his house does not rise to the level of a deceptive trade practice. The act does not extend to confusion on the part of Krueger over which State Farm company issued his policy.

Krueger argues that Baynes and State Farm engaged in a "bait and switch" selling technique. A bait and switch occurs when a business advertises a product at an attractive price in order to bring customers in, then

disparages the product to people who inquire about it and offers, in its place, another item which is more expensive than the advertised item but seems to be a bargain in comparison with the advertised product. *See People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 493 P.2d 660 (1972). There is no evidence that this happened in the present case. Krueger has presented no evidence that he initially wanted to be insured by State Farm Fire, nor is there any evidence that State Farm General is an undesirable source of coverage, or even that Krueger thought it was. The evidence shows only that State Farm General charged a higher premium for an older house. Accordingly, the Deceptive Trade Practices Act does not apply to this case. The trial court did not err by granting State Farm's motion for summary judgment on this issue.

### V. *Service of Process*

■■ State Farm moved for dismissal of Krueger's complaint, alleging ineffective service of process. State Farm has filed a notice of review challenging the trial court's denial of State Farm's motion. On appeal, State Farm contends Krueger did not effect service within the statute of limitations.

State Farm asks this court to rule that Krueger did not comply with the statutory requirements for service and, therefore, service was ineffective. *See* Minn.Stat. § 45.028 (1988). The trial court's order denying State Farm's motion did not specify the basis of the court's holding, and it is unclear whether the court considered State Farm's argument that Krueger did not comply with the requirements of section 45.028. The trial court should determine whether Krueger complied with the requirements of section 45.028. *See Thayer,* 322 N.W.2d at 604.

In addition, the trial court was only asked to determine whether service of process was sufficient. The trial court did not decide whether Krueger effected service within the limitations period, and we will not decide the issue on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (statute of limitations issue raised in, but not decided by, district court will not be addressed on appeal).

On remand, State Farm may renew its motion that Krueger's service of process was ineffective and not within the statute of limitations.

### DECISION

The provisions of the policy issued by State Farm General, not the standard fire insurance policy statute, determine the extent of coverage afforded. On remand, the trial court must apply the policy's terms to determine the extent of Krueger's coverage. The trial court must also determine whether the policy's 30–day vacancy/vandalism clause is applicable and, if State Farm renews its motion, whether Krueger effected proper service within the statute of limitations.

**Affirmed in part, reversed in part, and remanded.**