# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3982

_____

| | | |
|---|---|---|
| Farm Bureau Mutual Insurance Company, | * * * | |
| Plaintiff - Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| David Wilcox, | * * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 13, 2007
Filed: August 28, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

David Wilcox owned and rented a house and outbuildings in Dodge County, Minnesota. Farm Bureau Mutual Insurance Company (Farm Bureau) insured the properties against fire and other perils. The tenants moved out unexpectedly in June 2004. Wilcox removed all their possessions by early August and undertook various repairs. On November 21, 2004, Wilcox discovered that water running from an open faucet into a stopped sink in an upstairs bathroom had overflowed and extensively damaged the house. Wilcox filed a claim for the loss. Farm Bureau commenced this diversity action, seeking a declaratory judgment of no coverage because the loss was governed either by a policy provision excluding loss caused by vandalism to a house

vacant more than thirty days, or by the provision in Minnesota's statutory Standard Fire Policy excluding loss to a house vacant and unoccupied more than sixty days.

The district court granted summary judgment to Farm Bureau. The court concluded that whether the loss was caused by vandalism is a disputed issue of fact but granted summary judgment because the property was vacant and unoccupied for more than sixty days when the loss occurred, and the sixty-day vacancy/unoccupancy provision in the Standard Fire Policy applies and excludes the loss from coverage. Reviewing the grant of summary judgment de novo, we conclude that Farm Bureau failed to bring a governing policy provision to the district court's attention and therefore remand.

No fire insurance policy may be issued in Minnesota "unless it shall provide the specified coverage and conform as to all provisions" with the statutory Standard Fire Policy. Minn. Stat. § 65A.01, subd. 1. The statute "was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded, which . . . gave the insured less protection than he might naturally suppose he was getting under his contract." Heim v. Am. Alliance Ins. Co. of N.Y., 180 N.W. 225, 226 (Minn. 1920). The Standard Fire Policy guarantees a minimum level of coverage. "Insurance companies may, however, incorporate additional or different terms into their policies that offer more than the statutory minimum." Watson v. United Serv. Auto Ass'n, 566 N.W.2d 683, 690 (Minn. 1997) (citations omitted); see Krueger v. State Farm Fire & Cas. Co., 510 N.W.2d 204, 209 (Minn. App. 1993).

In its declaratory judgment complaint, Farm Bureau alleged that Wilcox's loss fell within an exclusion in the statutory Standard Fire Policy provisions:

> Unless otherwise provided [in the policy, the insurer] shall not be liable for loss occurring . . . while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of 60 consecutive days.

Minn. Stat. § 65A.01, subd. 3. In arguing Farm Bureau's motion for summary judgment to the district court, the parties represented that the Farm Bureau policy contained no general vacancy/unoccupied provision, only a more limited exclusion:

> **Vandalism and Malicious Mischief**
> There is no coverage for loss arising out of vandalism or malicious mischief, or any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, to a dwelling or its contents if the dwelling has been "vacant" or "unoccupied" for more than 30 consecutive days immediately before the loss.

Wilcox argued that the Farm Bureau policy provided more coverage than the statutory minimum because the policy's vacancy exclusion was limited to losses arising out of vandalism or malicious mischief. The district court rejected this contention. Relying on an alternative ground in Krueger v. State Farm Fire & Casualty Co., No. C0-94-557, 1994 WL 440258 (Minn. App. Aug. 16, 1994) (unpublished), the district court concluded that "under Minnesota law, the Vacancy/Vandalism clause does not afford greater coverage than the Standard Vacancy/Unoccupancy Clause and the Standard [Fire] Policy must apply."

On appeal, Wilcox again argues that the policy's narrow thirty-day exclusion for loss due to vandalism or malicious mischief offers more coverage than the sixty-day vacancy exclusion in the Standard Fire Policy. Therefore, the sixty-day exclusion does not apply and this loss was covered. Farm Bureau responds that the thirty-day vacancy/vandalism provision is distinct from a general exclusion for loss occurring while a house is vacant and unoccupied. Therefore, the policy is silent, and the sixty-day Standard Fire Policy provision applies. This is not an easy issue. Krueger was an unpublished opinion of Minnesota's intermediate appellate court, so it is not controlling precedent. Moreover, the ruling in Krueger that the Standard Fire Policy

exclusion applies when the policy is silent was an alternative ground -- the fire loss was due to arson so the policy's express thirty-day vacancy/vandalism exclusion also applied. Similarly, in <u>Vennemann v. Badger Mut. Ins. Co.</u>, 334 F.3d 772, 773 & n.3 (8th Cir. 2003), the fire loss was caused by arson, so we applied the policy's thirty-day vacancy/vandalism exclusion, enlarging the vacancy period to sixty days consistent with the Standard Fire Policy's mandatory minimum coverage.

The district court's application of the sixty-day exclusion results in an insurer using the Standard Fire Policy as a sword, and an insured losing coverage to a hidden statutory exclusion. Our review of the relevant Minnesota statutes casts grave doubt on this result. The above-quoted § 65A.01, subd. 1, further provides that a policy covering fire and other perils -

> <u>may be issued without incorporating the exact language of the Minnesota standard fire insurance policy, provided:</u> Such policy or contract shall, with respect to the peril of fire, afford the insured all the rights and benefits of the Minnesota standard fire insurance policy . . .; <u>such policy or contract is complete as to its terms of coverage; and the commissioner is satisfied such policy or contract complies with the provisions hereof.</u>

(Emphasis added.) The subdivision setting forth the mandatory provisions of the Standard Fire Policy, § 65A.01, subd. 3, provides that "the following provisions <u>and subject matter</u> shall be stated in the following words and in the following sequence" (emphasis added). The Minnesota insurance statutes further provide that "[n]o policy form" may be issued unless it has been filed for approval with the Commissioner of Insurance. Minn. Stat. § 70A.06, subd. 2. If there is compliance with these statutes and careful review of filed policy forms by the Commissioner, no policy covering the peril of fire should be issued in Minnesota unless it either *expressly* informs the insured that the sixty-day vacancy exclusion contained in the Standard Fire Policy applies, or contains the insurer's vacancy provision or some other provision offering more generous coverage.

In fact, as Wilcox's attorneys belatedly discovered and raised for the first time on appeal, the Farm Bureau policy contains such a provision. The Property Section of Wilcox's Personal Package Policy includes a Payment for Loss subpart that adds the following provision "with respect to coverage provided by this section":

> Except where specifically limited elsewhere in this policy, coverage on buildings will not be affected by being "vacant" or "unoccupied" unless the "vacancy" or "unoccupancy" lasts more than 180 consecutive days. In the event of loss to buildings "vacant" or "unoccupied" for more than 180 consecutive days we will pay 50% of the amount we would have paid if the building had not been "vacant" or "unoccupied."

Obviously, this is more generous coverage of vacant buildings than the sixty-day exclusion in the Standard Fire Policy. Therefore, Wilcox argues, the 180-day provision applies. As the water damage discovered in November 2004 occurred less than 180 days after the tenants vacated the house, it was a covered loss.

On appeal, Farm Bureau first argues that we should not consider the effect of the 180-day provision because it was not raised in the district court. That is of course the general rule. But it is subject to exceptions, for example, "where injustice might otherwise result, or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314-15 (8th Cir. 1991) (citations and quotation omitted). Here, the 180-day provision is in the record on appeal, and its interpretation is, at least in most instances. an issue of law for the court. See Noran Neurological Clinic, P.A., v. Travelers Indem. Co., 229 F.3d 707, 709-10 (8th Cir. 2000); Watson, 566 N.W.2d at 688. Farm Bureau beginning with its complaint alleged to the district court that the only provisions relevant to coverage were the thirty-day vacancy/vandalism provision in the policy and the sixty-day vacancy exclusion in the Standard Fire Policy. Although counsel for Wilcox should not have overlooked the 180-day policy provision in the district court, we think injustice would

result if an insurance company were permitted to prevail in a coverage dispute by failing to advise the trial court of a relevant provision in its complex policy form. Thus, we will exercise our discretion to consider the 180-day provision.

Turning to the merits of that provision, Farm Bureau argues that Wilcox's policy included a "Dwelling Module" and that, properly construed, the 180-day provision applies to "buildings" but not to "dwellings." This contention is without merit. "[T]he terms of an insurance policy . . . not specifically defined . . . must be given their plain, ordinary, or popular meaning." Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130, 132 (Minn. 1984). As a matter of plain meaning, a dwelling is one type of building.[1] Moreover, the Dwelling Module on which Farm Bureau relies is part of the Property Section of the policy and its Payment for Loss subpart expressly provides, "The Payment for Loss provisions in . . . the Property Section apply." That cross-reference includes the 180-day provision. Finally, Farm Bureau's proposed interpretation would leave the Dwelling Module without a general vacancy exclusion, contrary to the statutory mandates that the policy be "complete as to its terms of coverage" and include each "subject" addressed in the Standard Fire Policy provisions. When Farm Bureau filed this policy form for approval, we have no doubt that the Minnesota official who reviewed it for statutory compliance construed the 180-day vacancy provision as applying to dwellings, as well as to other buildings.

Because the policy's 180-day vacancy provision applies to the circumstances of this loss and clearly provides broader coverage, the district court erred in applying the statutory sixty-day exclusion. See Krueger, 510 N.W.2d at 209. In addition, because the 180-day provision applies to all perils covered by the policy, it renders moot another issue Wilcox raises for the first time on appeal -- whether the sixty-day

---

[1]The policy's glossary defined vacancy as, "For a dwelling *or other building,* when it is empty, containing nothing of significant value," and defined unoccupied as, "For a dwelling, when it is no longer used as a residence. For a building *other than a dwelling*, when it is not significantly utilized." (Emphasis added).

-6-

vacancy exclusion in the Standard Fire Policy applies only to fire losses, and therefore not to the water damage loss here at issue. Given the wording of Minn. Stat. § 65A.01, subd. 1 -- that a multi-peril policy must incorporate the provisions of the Standard Fire Policy "with respect to the peril of fire" -- this appears to be a serious unresolved issue of Minnesota law. We need not consider it in this case.

However, even if the policy's 180-day provision applies, it does not fully resolve the coverage question. If the water damage was caused by vandalism or by malicious mischief, the resulting loss is excluded by the policy's thirty-day vacancy/ vandalism provision (even with vandalism coverage increased to sixty days in accordance with Minn. Stat. § 65A.01, subd. 1, as construed in Vennemann, 334 F.3d at 773 n.3). The summary judgment record included conflicting evidence on this issue, and the district court declined to decide it. Wilcox initially testified that, in his opinion, someone intentionally turned on the faucet in an effort to damage the house. But in opposing summary judgment, he submitted an affidavit by his wife suggesting an accidental cause of the water damage -- in late October 2004, she turned on the upstairs faucet and did not turn it off when no water came out; a workman could later have turned the water back on, not knowing the faucet was open. We must remand to allow the district court to take up this issue in the first instance.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Farm Bureau's motion to supplement the record on appeal is granted.

_____