Elizabeth A. WATSON, Appellant,

Keith Watson, Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.

No. C7–96–110.

Court of Appeals of Minnesota.

July 2, 1996.

Review Granted Sept. 20, 1996.

Kenneth F. Daniels, James J. Moran, Golden Valley Law Offices, Golden Valley, MN, for Appellant.

Eric A. Nerness, William L. Davidson, Lind, Jensen & Sullivan, Minneapolis, MN, for Respondent.

Considered and decided by HARTEN, P.J., and WILLIS and STONE,* JJ.

## OPINION

HARTEN, Judge.

Appellant's estranged husband set fire to the couple's home, and appellant sought fire insurance proceeds from respondent insurer. The district court ruled that appellant's losses were excluded from coverage by the policy's fraud and intentional act provisions, even though appellant was an innocent co-insured. We reverse and remand.

## FACTS

Prior to 1991, appellant Elizabeth Watson and her husband, Keith Watson, lived in their jointly-owned trailer home. In 1991, the couple separated, and appellant moved out of their home. In December 1993, the couple's marriage dissolution was heard and granted, but the ensuing dissolution judgment was not entered until January 31, 1994. On the night of January 13, 1994, Keith

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

Watson set fire to the trailer home, causing losses of $26,500 for the home and $13,000 for personal property.

Appellant and her husband had insured the home under a fire insurance policy issued by respondent USAA Casualty Insurance Company (USAA). The policy provided coverage for up to $28,500 for loss of the dwelling and an equal amount for personal property loss. The policy contained an intentional loss exclusion, which excluded coverage for

> any loss arising out of any act committed: (1) by or at the direction of *an insured*; and (2) with the intent to cause a loss.

(Emphasis added.) The policy also contained the following fraud provision:

> The entire policy will be void if *an insured* has * * * after a loss, willfully and with intent to defraud[,] concealed or misrepresented any material fact or circumstance relating to this insurance.

(Emphasis added.) Citing these two provisions, USAA denied coverage.

Appellant sued USAA for breach of contract; Keith Watson was joined as an involuntary plaintiff. At trial, the jury found that Keith Watson had set the fire and that he had willfully and with intent to defraud, concealed or misrepresented a material fact or circumstance regarding the fire. The district court ordered judgment for USAA on appellant's claim. The district court found that appellant was an innocent insured, but nevertheless ruled that coverage for her losses was excluded under the policy.[1] Appellant challenges the denial of coverage.

### ISSUE

Is appellant entitled to coverage for loss from the fire as an innocent insured?

### ANALYSIS

■ The interpretation of statutes and insurance policies involves questions of law, which we review de novo. *Krueger v. State Farm Fire & Casualty Co.*, 510 N.W.2d 204, 208 (Minn.App.1993).

In the absence of ambiguity, the terms contained in an insurance contract are to be understood in their plain, ordinary, and popular meaning. Any ambiguity is to be construed in favor of the insured. An ambiguity exists when the policy language is susceptible to more than one reasonable meaning.

*Reitzner v. State Farm Fire & Casualty Co.*, 510 N.W.2d 20, 23–24 (Minn.App.1993) (citations omitted).

The district court denied appellant coverage on the basis of the policy's fraud and intentional act provisions. Appellant argues that those provisions do not unambiguously preclude coverage for an innocent insured. Specifically, appellant asserts that the words "an insured" in the provisions do not necessarily refer to *any* insured, but rather, those provisions could reasonably be interpreted to mean that coverage is denied only for *the particular* insured who committed the fraud or the intentional act.

Two Minnesota cases have addressed this issue of coverage for an innocent insured. In *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.*, 401 N.W.2d 381 (Minn.1987), the supreme court interpreted the words "the insured" in a fraud provision as referring only to "those persons responsible for the fraud, not to guilty and innocent insureds alike." *Id.* at 385. The supreme court stated:

> We hold, therefore, unless forbidden by the insurance contract, that innocent insured partners may recover their proportionate interest under the insurance policy for intentional destruction of their partnership property interest by another partner * * *.

*Id.* at 386.

In *Reitzner*, this court applied *Hogs Unlimited* and held that the policy at issue plainly and unambiguously denied coverage for an innocent insured. *Reitzner*, 510 N.W.2d at 24. There, the relevant policy provision stated that if the named insured "or any other person insured under this policy" intentionally caused the loss, then cover-

---

1. The district court also ruled that appellant was not liable with Keith Watson for return of $10,- 000 that USAA had advanced to the couple.

age would be denied for the named insured "or any other insured." *Id.*

We conclude that the instant policy unambiguously denies coverage for an innocent insured. "The" is a definite article; accordingly, the supreme court in *Hogs Unlimited* concluded that "the insured" did not refer to all insureds. "An" is an indefinite article, however, and in its plain sense means *any* insured. The fraud and intentional act provisions in the instant policy, given their plain and ordinary meaning, exclude coverage for all insureds when any one insured commits fraud or intentionally causes the loss. *See Dolcy v. Rhode Island Joint Reinsurance Ass'n,* 589 A.2d 313, 316 (R.I.1991) (interpreting "an insured" to deny coverage for innocent insured); *Vance v. Pekin Ins. Co.,* 457 N.W.2d 589, 593 (Iowa 1990) (same).

This policy interpretation does not end our inquiry, however; we must also determine whether the policy, to the extent it denies coverage for an innocent insured, satisfies statutory requirements. Minn.Stat. § 65A.01 (1994 & Supp.1995) sets out the "standard fire insurance policy" to be used in Minnesota. The statute is intended to protect insureds from unexpected limitations in fire loss coverage. *Krueger,* 510 N.W.2d at 208. The statute is remedial and therefore must be construed liberally in favor of insureds. *Id.* at 209. The statutory form sets out the minimum requirements; an insurer may provide more coverage, but not less. *Id.*

The fraud provision contained in the statutory policy uses the words "the insured," which the supreme court has interpreted to mean only the particular insured who committed the fraud. *See* Minn.Stat. § 65A.01, subd. 3; *Hogs Unlimited,* 401 N.W.2d at 384–85. Appellant thus argues that an insurer may not deny coverage for an innocent insured because such denial would result in less policy coverage than the minimum coverage mandated by statute. Therefore, appellant would have us reform her policy to comply with the statute and provide coverage for her as an innocent insured. *See Ponder v. Allstate Ins. Co.,* 729 F.Supp. 60 (E.D.Mich.1990) (statutory policy, which referred to "the insured" and so did not deny

coverage for innocent insureds, superseded policy, which referred to "any insured."); *Osbon v. National Union Fire Ins. Co.,* 632 So.2d 1158 (La.1994) (policy, which purported to deny coverage for innocent insureds, reformed to comply with standard fire insurance policy).

Neither *Hogs Unlimited* nor *Reitzner* directly addressed the issue now before us: whether the statute prohibits the denial of fire coverage for an innocent insured. *Hogs Unlimited* is instructive, however.

In *Hogs Unlimited,* the supreme court quoted the fraud provision there at issue and noted that it was the same as the standard provision required by section 65A.01. 401 N.W.2d at 384. Then, rather than interpreting the *policy,* the supreme court considered what the *legislature* meant by the words "the insured." *Id.* In concluding that those words referred only to the persons responsible for the fraud, the supreme court stated:

> We do not think the legislature intended to visit the blame of the errant insured on coinsureds who, having no control over the unauthorized conduct, are themselves blameless; nor do we think the legislature intended to make insureds their brother's keeper under penalty of losing their own insurance protection.

*Id.* The supreme court then considered the public policy implications:

> Early case law from other jurisdictions tended to deny recovery to innocent insureds. Public policy, it was thought, should discourage arson and other crimes, remove opportunities for fraud and collusion against insurers, and avoid making wrongdoing profitable. Nevertheless, the modern trend of case law has been to allow the innocent insured to recover.
>
> Most of the cases allowing recovery of insurance proceeds have been "innocent spouse" cases. Generally, the husband and wife are estranged and one spouse torches the home to spite or hurt the other. In such a situation, the likelihood of collusion is slim.

*Id.* at 385 (citations omitted). The supreme court rejected the insurer's argument that, because of an enhanced danger of collusion,

the "innocent spouse" rule should not be extended to business partnerships. *Id.* at 385–86. It concluded:

> It seems to us, notwithstanding the potential for fraud and profit from wrongdoing, that innocent insureds should not suffer for the aberration of a coinsured, whether a spouse or business colleague. We think this is the better public policy. We think it would be unfair and harsh to extend vicarious liability into this context.

*Id.* at 386.

Thus, in *Hogs Unlimited,* the supreme court interpreted the fraud provision in the statutory standard fire insurance policy as denying coverage only for the insured who committed the fraud. *Id.* It also concluded that such interpretation effected "the better public policy." *Id.* In *Krueger,* the supreme court held that fire insurers cannot provide less coverage than that provided in the statutory standard policy. 510 N.W.2d at 209. Taken together, these two cases suggest that a fire insurer may not exclude coverage for an innocent insured, even if the policy's language is unambiguous in this regard.

The issue becomes somewhat clouded, however, given the language in *Hogs Unlimited* that an innocent insured may recover "unless forbidden by the insurance contract." 401 N.W.2d at 386. This appears to indicate that an insurer **could by the terms of the policy** deny coverage for an innocent insured. But a *Krueger* problem arises from a supposition that the insurance policy can abridge the statute. In *Hogs Unlimited,* the supreme court, having considered the legislature's intent in enacting the statutory fraud provision, concluded that public policy favors allowing coverage. In addition, we note that an innocent insured has a reasonable expectation of coverage, and the statute must be construed liberally in favor of the insured.

Therefore, we resolve the latent incompatibility of *Hogs Unlimited* and *Krueger* in favor of the insured, and we hold that USAA may not deny coverage to appellant, the innocent insured in the instant case.

In support of a contrary result, USAA cites the following provision of the statutory policy:

> **Unless otherwise provided in writing added hereto** [the insurer] shall not be liable for loss occurring: (a) while the hazard is increased by any means within the control or knowledge of the insured * * *.

Minn.Stat. § 65A.01, subd. 3 (emphasis added). USAA argues that the emphasized language allows an insurer to modify this exclusion to encompass intentional acts by **any** insured instead of by **the** insured. We disagree. This provision in the statutory policy allows insurers to exclude coverage in certain circumstances. We think that the intent of the introductory phrase is to clarify that the insurer is not *required* to exclude coverage in those circumstances—it may provide **more** coverage than that provided in the statutory policy. We do not believe that the phrase was intended to allow the insurer to expand the scope of the authorized exclusions.

USAA also argues that the policy should be enforced as written because the Commissioner of Commerce approved that particular form. Minn.Stat. § 65A.37 (1994) requires that policies be on forms approved by the Commissioner; it does not negate the requirement that policies provide at least as much coverage as the statutory policy. *See also* Minn.Stat. § 65A.01, subd. 4(5) (for policies insuring against additional perils, forms approved by the Commissioner that differ from the statutory policy may be used if they modify the statutory policy **in favor of the insured** ).[2]

---

**2.** USAA further contends that we may not consider the statutory argument because appellant failed to raise it below. An appellate court may consider an issue not raised below if the issue was raised in the briefs and does not depend on new or controverted facts. *In re Estate of Abesy,* 470 N.W.2d 713, 715 (Minn.App.1991).

An appellate court may decide an issue not determined by a trial court where that question is decisive of the entire controversy and where there is no possible advantage or disadvantage to either party in not having a prior ruling on the question.

*Harms v. Independent Sch. Dist. No. 300,* 450 N.W.2d 571, 577 (Minn.1990); *see also* Minn. R. Civ.App. P. 103.04 (appellate court may review any matter as the interest of justice requires). Here, resolution of the issue becomes conclusive, and no facts are in dispute. Moreover, the issue presents a question of law and was well-briefed by both parties. Finally, public policy demands

Accordingly, we remand to the district court to order amended judgment not inconsistent with this opinion allowing appellant to recover her proportionate part of the insured loss. *See Hogs Unlimited,* 401 N.W.2d at 386 (innocent insured may recover proportionate interest only).[3]

## DECISION

■ The statutory standard fire insurance policy excludes coverage only for the particular insured who intentionally caused the loss or committed fraud and does not exclude coverage for an innocent insured. We accordingly reform appellant's USAA policy, to provide coverage for appellant in conformity with the statute.

**Reversed and remanded.**

---

that we address the issue to avoid sustaining an insurance policy believed to violate the statute.

3. Appellant also challenges the district court's order that she pay USAA costs and disbursements. Because we hold that USAA should not have prevailed on appellant's breach of contract claim, USAA is not entitled to recover its costs and disbursements.