Elizabeth A. WATSON, Respondent,

Keith Watson, Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, petitioner, Appellant.

No. C7–96–110.

Supreme Court of Minnesota.

July 10, 1997.

Eric A. Nerness, William L. Davidson, Lind, Jensen & Sullivan, Minneapolis, for Appellant.

Kenneth F. Daniels, James J. Moran, Kenneth F. Daniels & Assoc., Golden Valley, for Respondent.

## OPINION

ANDERSON, Justice.

United Services Automobile Association Casualty Insurance Company (USAA) appeals from a decision holding that it was required to compensate its innocent co-insured, respondent Elizabeth Watson. Elizabeth Watson sustained losses when her estranged husband, plaintiff Keith Watson, who was also an insured under the USAA policy, intentionally set fire to their mobile home. The district court ordered judgment in favor of USAA. The court concluded that the clear language of the USAA insurance policy issued to Elizabeth and Keith Watson excluded coverage for the loss.

The Minnesota Court of Appeals reversed the district court on the ground that the USAA insurance policy did not conform to the minimum coverage requirements set forth in Minn.Stat. § 65A.01 (1996), the Minnesota standard fire insurance policy. The court of appeals then reformed USAA's policy to conform to the minimum requirements mandated by Minn.Stat. § 65A.01 and remanded to the district court for an order

allowing Elizabeth Watson to recover her proportionate share of the insured loss. USAA appeals and raises the issue of whether an insurance policy which purports to exclude coverage for an innocent co-insured spouse based upon the intentional acts of the other insured spouse is valid and enforceable under Minnesota law. We affirm.

On the evening of January 13, 1994, a mobile home and its contents located at 569 East Gull River Road in Brainerd, Minnesota were completely destroyed by fire. The Brainerd Fire Department investigated the fire and in its report listed the ignition factor as "undetermined."

At the time of the fire, the mobile home and the real estate on which it was located were being purchased by Elizabeth Watson and Keith Watson as joint tenants under the terms of a contract for deed. Elizabeth and Keith Watson lived in the mobile home together from 1986 until April 1991, when they separated and Elizabeth Watson moved out. Keith Watson continued to live in the home. After she left in 1991, Elizabeth Watson did not have a key to the home. Nonetheless, by Keith Watson's account, Elizabeth Watson "took care of" payment of real estate taxes on the property, while he paid the homeowner's insurance premiums. Elizabeth Watson petitioned to dissolve the parties' marital relationship and a marriage dissolution hearing was held on December 28, 1993, more than two weeks before the fire. At the hearing, a dissolution of the Watsons' marriage was granted, but the dissolution decree was not filed until January 31, 1994, 18 days after the fire. The record shows that both parties were experiencing some financial difficulties at the time of the fire.

Elizabeth and Keith Watson were named insureds on a homeowner's insurance policy issued by USAA, which policy covered the mobile home and its contents. The policy provided coverage of up to $27,800 for the dwelling, $27,800 for personal property, and $5,560 for loss of use. After the fire, the

Watsons prepared a loss report. They provided the report to USAA on January 14, 1994. That same day, USAA inspected the loss site and advanced the Watsons $10,000 pursuant to the policy.[1]

Elizabeth Watson subsequently submitted a claim to USAA for further insurance proceeds under the policy.[2] USAA then conducted an investigation of the fire. As part of the investigation, USAA elicited two statements from Keith Watson in which he stated that he was in Aitkin, Minnesota on a construction job during the time of the fire. He denied intentionally starting the fire or arranging to have the fire set. USAA, however, determined that the fire involved arson. USAA based its conclusion upon the elimination of all accidental sources of ignition, the pattern and progress of the fire, and the presence of kerosene in one of the carpet and padding samples taken from the living room of the home. Accordingly, USAA denied Elizabeth Watson's claim for insurance proceeds under two provisions in the policy which excluded coverage for intentional acts and concealment or fraud relating to the policy. The "intentional loss" provision contains the following language:

### SECTION I—EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

&ast; &ast; &ast; &ast; &ast; &ast;

h. Intentional Loss, meaning any loss arising out of any act committed:

(1) by or at the direction of **an insured**; and

(2) with the intent to cause a loss.

(Emphasis added.) The "concealment or fraud" provision of the policy contains the following language:

### SECTIONS I AND II—CONDITIONS

&ast; &ast; &ast; &ast; &ast; &ast;

---

1. Elizabeth Watson deposited $9,000 of these funds into her checking account. On January 21, 1994, she wrote a $2,211.06 check for the September 1993 installment on the contract for deed.

2. The record is not clear whether Keith Watson also submitted a claim for additional insurance proceeds, but USAA asserts in its brief that both Elizabeth and Keith Watson submitted claims.

2. Concealment or Fraud. The entire policy will be void if **an insured** has:

 a. before a loss, willfully; or

 b. after a loss, willfully and with intent to defraud;

concealed or misrepresented any material fact or circumstance relating to this insurance.

(Emphasis added.)

Following the denial of coverage, Elizabeth Watson served a complaint upon USAA alleging that USAA in bad faith failed to pay her benefits in the amount of $58,300. USAA filed an answer denying liability for the loss under the terms of the policy and under Minn.Stat. § 65A.01, subd. 3 (1996), the Minnesota standard fire insurance policy. USAA alleged that its policy did not cover a loss caused by the insured; that its policy was void or voidable due to material misrepresentations relating to the insurance; and that its policy was void or voidable and/or the loss was not covered because the risk of hazard of loss was increased. *See* Minn.Stat. § 65A.01, subd. 3 (excluding coverage for losses occurring "while the hazard is increased by any means within the control or knowledge of the insured"). USAA also counterclaimed for the return of the $10,000 it had advanced to Elizabeth and Keith Watson, plus costs and disbursements. USAA subsequently filed a motion to join Keith Watson as a plaintiff in the action brought by Elizabeth Watson, which motion was granted by the district court.

A jury trial was held from October 17 to 19, 1995. USAA presented the testimony of a specialist in fire debris analysis who had analyzed four samples of burned carpet and padding that were taken from the Watsons' mobile home. The specialist testified that of the four samples, only one revealed the presence of any ignitable liquid residue. The specialist recognized that residue as having the characteristics of burned kerosene. Elizabeth Watson also testified at trial, and stated that she was at her father's home in Nisswa at the time of the fire.

The jury returned a special verdict on October 19, 1995. The jury was asked to determine whether the fire at the Watsons' home was an incendiary fire (intentionally set), and found that the fire was incendiary in origin. The jury also found that Keith Watson had participated in, arranged for, or aided or abetted the setting of the fire.[3] The jury further found that Keith Watson had willfully and with intent to defraud, concealed or misrepresented to USAA material facts or circumstances concerning this loss. The jury was not asked to decide whether Elizabeth Watson was an innocent insured.

The district court filed its findings, conclusions, order, and memorandum on October 20, 1995. The court found that Elizabeth and Keith Watson's home had been damaged in the amount of $26,500 for the loss of dwelling and $13,000 in personal property loss. The court also found that under the USAA insurance policy, losses are not insured when the loss arises out of any act " 'by or at the direction of **an insured.**' " (Emphasis added.) The court then found that the fire had been caused by or at the direction of Keith Watson, an insured. Based upon these findings, the court concluded that the USAA policy did not cover the Watsons' loss, and dismissed the action. The court awarded USAA costs and disbursements against Keith Watson, but did not award costs and disbursements against Elizabeth Watson.

In its accompanying memorandum of law, the district court stated that it had entered judgment in favor of USAA "reluctantly" and urged reversal on appeal. The court stated that it "feels compelled to follow Minnesota precedent" set by *Reitzner v. State Farm Fire and Cas. Co., Inc.,* 510 N.W.2d 20 (Minn.App.1993), under which an innocent co-insured may be excluded from coverage if the terms of the insurance policy are clear and unambiguous. The court pointed out that public policy favored coverage of innocent co-insureds in this situation. The court also noted that Elizabeth Watson had the expectation of coverage and had no way to separate herself from the loss caused by Keith Watson. The court observed that it was a "gross miscarriage of justice" to allow

---

**3.** Keith Watson was never indicted or charged with criminal arson for the fire.

USAA to "escape" coverage to Elizabeth Watson.

On November 2, 1995, USAA moved for an order granting judgment against both Elizabeth Watson and Keith Watson, jointly and severally, for the $10,000 advancement. USAA also moved to amend the district court's order to provide for an award of costs and disbursements against Elizabeth Watson. On December 1, 1995, the court filed its amended findings, conclusions, order, and memorandum. The court ordered Elizabeth Watson to pay USAA costs and disbursements based upon the mandatory language of Minn.Stat. §§ 549.02 and 549.04 (1996). The court also ordered Keith Watson to reimburse USAA for the full $10,000 advancement, plus interests, costs, and disbursements, because he had been unjustly enriched by the advancement of the funds. The court declined to hold Elizabeth Watson liable for the $10,000, concluding that she had not been unjustly enriched.

Elizabeth Watson appealed. The court of appeals agreed with the district court that the use of the term "an insured" in USAA's policy unambiguously denies coverage for an innocent insured when any other insured intentionally causes a loss or commits fraud. *Watson v. United Services Auto. Ass'n,* 551 N.W.2d 500, 502 (Minn.App.1996). The court of appeals, however, reversed. *Id.* at 504. It based its decision to reverse on a theory that was not presented to or considered by the district court. *See id.* at 503 n. 2. The court of appeals observed that the Minnesota standard fire insurance policy contained in Minn.Stat. § 65A.01 uses the term "the insured" instead of "an insured." *Id.* at 502. The court of appeals noted that this court has interpreted the term "the insured" as excluding coverage only for the particular insured who intentionally caused a loss or committed fraud and not for an innocent insured. *Id.* at 503 (citing *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.,* 401 N.W.2d 381, 384 (Minn.1987)). Accordingly, the court of appeals reformed USAA's policy to conform with the Minnesota standard fire insurance policy. *Id.* at 504. The court remanded to the district court for an order allowing Eliza-

beth Watson to recover her proportionate share of the insured loss. *Id.*

USAA appealed and raises two issues. First, USAA claims that the court of appeals erred in deciding the case based upon a theory that was raised for the first time on appeal. Second, USAA claims that it should prevail on the merits because the USAA insurance policy unambiguously precludes coverage for an innocent co-insured when another insured intentionally causes a loss. We affirm.

I.

We first address whether the court of appeals improperly based its decision upon the theory—raised for the first time on appeal—that exclusion of coverage for innocent co-insured spouses conflicts with the Minnesota standard fire insurance policy. Minnesota Rules of Civil Appellate Procedure, Rule 103.04 provides that, on appeal from a judgment, appellate courts may review "any order involving the merits or affecting the judgment" or "any other matter as the interest of justice may require." But the general rule is that appellate courts will not consider questions which were not presented to or decided by the district court. *Holen v. Minneapolis–St. Paul Metropolitan Airports Comm'n,* 250 Minn. 130, 135, 84 N.W.2d 282, 286 (1957).

This court has carved out a "well-established" exception to the general rule:

[A]n appellate court may base its decision upon a theory not presented to or considered by the trial court *where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where,* as in [a case] involving undisputed facts, *there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.*

*Id. (emphasis in original); see also Hart v. Bell,* 222 Minn. 69, 75, 23 N.W.2d 375, 378–79 (1946) (holding that a court has a duty to consider the issue of a contract's illegality for the first time on appeal if the illegality is apparent from undisputed facts, if the illegality is in clear contravention of public policy,

and if a decision thereon will be decisive of the entire controversy on its merits). Factors favoring review include: the issue is a novel legal issue of first impression; the issue was raised prominently in briefing; the issue was "implicit in" or "closely akin to" the arguments below; and the issue is not dependent on any new or controverted facts. *See Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn.1992); *Perl v. St. Paul Fire and Marine Ins. Co.*, 345 N.W.2d 209, 215 n. 6 (Minn.1984).

USAA claims that because the theory relied upon by the court of appeals was not presented to the district court, the record is insufficient to provide meaningful review of the issue. We reject this argument. Applying the above factors which favor review, we conclude that the question of whether exclusion of coverage for innocent co-insured spouses conflicts with the Minnesota standard fire insurance policy fits squarely within the exception to the general rule that we will not consider questions which were not presented to or decided by the district court. The issue is plainly decisive of the entire controversy on its merits. The issue was raised prominently in briefing to the court of appeals and to this court. The issue is a novel legal issue of first impression before this court and pertains to the unenforceability of an insurance contract. Further, the statute-based theory upon which the court of appeals based its ruling is an emerging branch of the innocent co-insured spouse doctrine, and because it involves analyzing the language of the policy, it is closely akin to the contract-based theory upon which the district court based its ruling. The parties in this case do not dispute the facts; thus, there is no possible advantage or disadvantage to either party in not having had a prior ruling by the district court on the question. Therefore, even though the theory that exclusion of coverage for innocent co-insured spouses conflicts with the Minnesota standard fire insurance policy was not presented to or considered by the district court, we conclude that the court of appeals properly considered Elizabeth Watson's arguments on this issue.

## II.

Having concluded that the court of appeals properly considered Elizabeth Watson's arguments, we proceed to consider on its merits the issue of whether USAA's insurance policy, which purports to exclude coverage for an innocent co-insured spouse based upon the intentional acts of the other insured spouse, is valid and enforceable under Minnesota law.

The construction of statutes is a question of law, and this court is not bound by the lower courts' conclusions in applying a statute to undisputed essential facts. *Meister v. Western Nat. Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). The interpretation and construction of an insurance contract is also a question of law. *Id.* On appeal, this court is not bound by the lower courts' conclusions with respect to issues of law and instead conducts an independent review of the record. *Id.*

### A. Is "An Insured" Ambiguous?

In recent years, courts have looked to the language of the insurance policy to determine whether innocent co-insured spouses can recover insurance proceeds. The majority of courts use a contract-based theory which focuses on a contractual analysis of the insurance policy provisions. *See, e.g., Vance v. Pekin Ins. Co.*, 457 N.W.2d 589, 592 (Iowa 1990); *Hildebrand v. Holyoke Mut. Fire Ins. Co.*, 386 A.2d 329, 331 (Me.1978). Under this contract-based theory, if the policy language is ambiguous as to whether innocent co-insured spouses are excluded from coverage, courts will construe the policy to allow recovery by the innocent co-insured spouse. *See, e.g., Sales v. State Farm Fire and Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir.1988); *Vance*, 457 N.W.2d at 592. USAA's insurance policy excludes from coverage a loss caused by the intentional acts of "an insured." In addition, under a second provision of USAA's policy, the fraudulent acts of "an insured" render the policy void.

Courts have generally found ambiguity in policies which exclude from coverage the intentional or fraudulent acts of "the insured." *See* Rachel R. Watkins Schoenig, *Property Insurance and the Innocent Co–Insured:*

*Was it All Pay and No Gain for the Innocent Co–Insured?*, 43 Drake L.Rev. 893, 900 (1995) and cases cited therein. Accordingly, using the contract-based theory, this court in *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.* held that a policy barring coverage for fraud by "the insured" was ambiguous, and, therefore, innocent co-insured business partners could recover under the policy. 401 N.W.2d 381, 385–86 (Minn.1987).

■ Courts have found no ambiguity, however, in policies which exclude from coverage the intentional or fraudulent acts of "you or any other insured," "any insured," and "an insured."[4] Consistent with this line of cases, the court of appeals held in *Reitzner v. State Farm Fire and Cas. Co., Inc.* that a policy excluding coverage based on the intentional or fraudulent acts of "you or any other insured" unambiguously precluded an innocent co-insured assignee of the vendor of a contract for deed from recovering on the policy when the contract for deed vendee intentionally set fire to the property. *Reitzner*, 510 N.W.2d at 24. We conclude that the "an insured" language of USAA's policy unambiguously bars coverage for innocent co-insured spouses.

### B. Statute-Based Theory

But the conclusion that USAA's policy language is unambiguous does not end our inquiry. An emerging theory of recovery for innocent co-insured spouses, a statute-based theory, adds a second step to the contractual analysis. Under the statute-based theory, if an insurance policy provision unambiguously excludes coverage for innocent co-insured spouses, the court must then look to the state's statutory standard fire insurance policy. If the exclusion of coverage contained in the insurance policy conflicts with the level of protection provided in the statutory standard fire insurance policy, the court will hold the insurance policy unenforceable. To date, courts in Michigan, Louisiana, and Georgia have adopted this statute-based theory. *See Ponder v. Allstate Ins. Co.*, 729 F.Supp. 60, 62 (E.D.Mich.1990); *Osbon v. National Union Fire Ins. Co.*, 632 So.2d 1158, 1161 (La. 1994); *Borman v. State Farm Fire· & Cas. Co.*, 446 Mich. 482, 521 N.W.2d 266, 269 (1994); *Fireman's Fund Ins. Co. v. Dean*, 212 Ga.App. 262, 265, 441 S.E.2d 436, 438 (Ga.Ct.App.1994), *cert. denied* (Ga., Apr. 22, 1994). The court of appeals also relied on this theory to invalidate USAA's intentional loss and concealment or fraud provisions. *Watson*, 551 N.W.2d at 502–504. Under the statute-based theory, courts have remedied a conflict between an insurance policy and the statutory standard fire insurance policy by reforming the insurance policy to provide at least the level of coverage provided for in the statute. *See, e.g., Osbon*, 632 So.2d at 1161; *Dean*, 441 S.E.2d at 438.[5]

---

**4.** *See Amick v. State Farm Fire and Cas. Co.*, 862 F.2d 704, 706 (8th Cir.1988) ("you or any other insured"); *Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139, 1141–42 (3d Cir.1985) ("any insured"); *Bryant v. Allstate Ins. Co.*, 592 F.Supp. 39, 41 (E.D.Ky.1984) ("an insured"); *Chacon v. American Family Mutual Ins. Co.*, 788 P.2d 748, 752 (Colo.1990) ("any insured"); *Vance*, 457 N.W.2d at 589; *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 752 (1989) ("an insured"); *Woodhouse v. Farmers Union Mutual Ins. Co.*, 241 Mont. 69, 785 P.2d 192, 194 (1990) ("an insured"); *McAllister v. Millville Mutual Ins. Co.*, 433 Pa.Super. 330, 341, 640 A.2d 1283, 1289 (1994) (both "an insured" and "any insured"), *appeal den.*, 539 Pa. 653, 651 A.2d 540 (1994); *Travelers Ins. Co. v. Blanchard*, 431 So.2d 913, 915 (La.Ct.App.1983) ("an insured").

**5.** The Michigan courts provide an example of the statute-based theory in operation. In *Morgan v. Cincinnati Ins. Co.*, the Michigan Supreme Court contractually analyzed a provision of the Michigan standard fire insurance policy which stated that the policy shall be void if "the insured" commits fraud, and held that the statutory policy did not bar recovery for insureds who are innocent of fraud. 411 Mich. 267, 307 N.W.2d 53, 54–55 (1981) (citing M.C.L.A. § 500.2832). Subsequently, in *Ponder v. Allstate Ins. Co.*, a United States District Court interpreting Michigan law held that an insurance policy's unambiguous concealment or fraud provision barring recovery as to "any insured" committing fraud must be reformed to conform with the fraud clause in the Michigan standard fire insurance policy. 729 F.Supp. at 61–62 (citing M.C.L.A. § 500.2832). Thereafter, in *Borman v. State Farm Fire & Cas. Co.*, the Michigan Supreme Court held that a policy's intentional acts and concealment or fraud provisions using the language "you or any person insured" and "you [and/or] any other insured" were both in conflict with Michigan's standard fire insurance policy, and, therefore, were void. 521 N.W.2d at 267 n. 4, 269 (citing M.C.L.A. § 500.2832 (repealed 1990)).

USAA argues that in *Hogs Unlimited,* this court ratified the exclusion from coverage of innocent co-insured spouses when it held that "unless forbidden by the insurance contract," innocent co-insured partners may recover. *Hogs Unlimited,* 401 N.W.2d at 386. USAA further contends that when the court of appeals applied *Hogs Unlimited* in *Reitzner,* it implicitly considered and rejected the statute-based theory as grounds for an innocent co-insured to recover under Minnesota law. *See Reitzner,* 510 N.W.2d at 24. We disagree. Neither this court in *Hogs Unlimited* nor the court of appeals in *Reitzner* were presented with or directly considered a conflict between an insurance policy and the Minnesota standard fire insurance policy. Indeed, we have reviewed no case in which a court declined to reform an insurance policy when presented with a conflict between an insurance policy and the statutory standard fire insurance policy.[6] Thus, we consider it an open question whether insurance policy provisions excluding innocent co-insured spouses from recovery are viable under Minnesota law. We conclude that the statute-based theory is the proper approach to follow in resolving this question.

### C. Minnesota Standard Fire Insurance Policy

We turn, then, to the question of whether USAA's policy conflicts with the Minnesota standard fire insurance policy. The Minnesota standard fire insurance policy is contained in Minn.Stat. § 65A.01. The statute was enacted to "do away with the evils arising from the insertion in policies of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under his contract." *Heim v. American Alliance Ins. Co. of New York,* 147 Minn. 283, 287, 180 N.W. 225, 226 (1920). Because the statute has a remedial purpose, it must be broadly construed. *Id.* at 288, 180 N.W. at 226–27.

Minnesota Statutes section 65A.01 was intended to secure uniformity in fire insurance policies. *Id.* at 288, 180 N.W. at 227. Use of the statutory form is mandatory, and its provisions may not be omitted, changed, or waived. *Id.* This principle is reflected in the statute's "conformity clause," which states:

> No policy or contract of fire insurance shall be made, issued or delivered by any insurer * * * on any property in this state, unless it shall provide the specified coverage and conform as to all provisions, stipulations, and conditions, with such form of policy, except as provided in * * * statutes containing specific requirements that are inconsistent with the form of this policy.

Minn.Stat. § 65A.01, subd. 1. This court has held that when an insurance policy provision is in direct conflict with a statute regulating the insurance industry, the statute's conformity clause operates to substitute the statutory provisions for the policy provision. *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.,* 366 N.W.2d 271, 275 (Minn.1985).

We agree with the court of appeals that the Minnesota standard fire insurance policy guarantees a minimum level of coverage that supersedes any attempt to limit coverage to less than the statutory minimum. *See Krueger v. State Farm Fire and Cas. Co.,* 510 N.W.2d 204, 209 (Minn.App.1993). Insurance companies may, however, incorporate additional or different terms into their policies that offer more coverage than the statutory minimum. *See id.* The statute provides conditions under which insurance companies may incorporate additional or different terms into their policies:

6. In *Borman,* the Michigan Supreme Court noted:

> We recognize that courts in other jurisdictions have enforced against innocent insureds contractual provisions voiding policies for fraud, concealment, or intentional acts by "an" or "any" insured, but in none of these cases did the court advert to any conflict with a standard policy prescribing a provision voiding the policy because of the wrongful conduct of "the insured."

*Borman,* 521 N.W.2d at 270; *see, e.g., Vance,* 457 N.W.2d at 592–93 (upholding policy's intentional loss provision under contract-based theory, without reference to Iowa's standard fire insurance policy).

Any policy or contract * * * may be issued without incorporating the exact language of the Minnesota standard fire insurance policy, provided: Such policy or contract shall, with respect to the peril of fire, afford the insured all the rights and benefits of the Minnesota standard fire insurance policy and such additional benefits as the policy provides; * * * such policy is complete as to its terms of coverage; and, the commissioner is satisfied that such policy or contract complies with the provisions hereof.

Minn.Stat. § 65A.01, subd. 1; *see also Fireman's Fund Ins. Co. v. Vermes Credit Jewelry,* 185 F.2d 142, 144 (8th Cir.1950) (holding that any warranty, limitation, or condition which is not specifically authorized by Minnesota standard fire insurance policy or is not in harmony with the letter or spirit of the laws of Minnesota relating to fire insurance cannot be given effect).

 USAA argues that Elizabeth Watson cannot recover under the USAA policy because the policy contains an "intentional loss" provision excluding coverage for any loss arising out of any act committed "by or at the direction of **an insured**," and Keith Watson, an insured, intentionally caused the loss.[7] Because the Minnesota standard fire insurance policy does not contain a parallel "intentional loss" provision, USAA's "intentional loss" provision is an additional term. Therefore, we will uphold USAA's "intentional loss" provision only if it affords the insured all the rights and benefits of the Minnesota standard fire insurance policy or offers additional benefits which provide more coverage to the insured than the statutory minimum. *See* Minn.Stat. § 65A.01, subd. 1; *Krueger,* 510 N.W.2d at 209. We conclude that USAA's "intentional loss" provision, insofar as it excludes coverage for innocent co-insured spouses, is at odds with the rights and benefits of the Minnesota standard fire insurance policy.

Even though the Minnesota standard fire insurance policy does not contain a specific "intentional loss" provision, it does contain other provisions dealing with policy exclusions for intentional acts. For example, the "concealment or fraud provision" of the Minnesota standard fire insurance policy states:

> This entire policy shall be void if, whether before a loss, **the insured** has willfully, or after a loss, the insured has willfully and with intent to defraud, concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein.

Minn.Stat. § 65A.01, subd. 3 (emphasis added).[8] Another provision states that the insurance company shall not be liable for a loss occurring "while the hazard is increased by any means within the control or knowledge of **the insured** * * *." *Id.* (emphasis added). We held in *Hogs Unlimited* that a policy containing the "standard fraud provision" using the "the insured" language of Minn.Stat. § 65A.01, subd. 3, voids the policy only as to "guilty" insureds and not as to innocent co-insureds. *Hogs Unlimited,* 401 N.W.2d at 384–85. Thus, we conclude that the legislature's use of "the insured" in the Minnesota standard fire insurance policy evinces a general intent to compensate an innocent co-insured spouse despite the intentional acts of the other insured spouse.

Courts in other states have adopted similar reasoning. In *Borman,* the Michigan Supreme Court held that an insurance policy provision, which excluded coverage for the intentional acts of "you or any other insured," "cover[ed] the same subject matter, fraud on the insurer," as the concealment or fraud provision of the statutory standard policy. *Borman,* 521 N.W.2d at 267 n. 4, 268–69. Similarly, in *Osbon,* the Louisiana Supreme Court determined that a policy's "intentional loss" provision did not conform to the Louisiana standard fire insurance policy

---

**7.** While the USAA insurance policy contains both an "intentional loss" provision and a "concealment or fraud" provision, in its brief to this court, USAA's arguments regarding the validity of its exclusion of coverage for innocent insureds solely concern the "intentional loss" provision.

**8.** It should be noted that USAA's concealment or fraud provision voids the policy if **an insured** has before a loss, willfully; or after a loss, willfully and with intent to defraud; concealed or misrepresented any material fact or circumstance relating to the insurance.

even though the statute did not specifically contain an "intentional loss" provision. *Osbon,* 632 So.2d at 1159–61. The statute did, however, provide coverage for innocent co-insureds when "the insured" neglected to use all reasonable means to preserve the property after a loss, or when the hazard was increased by means within the control or knowledge of "the insured." *Id.* at 1159–60 (citing LSA–R.S. 22:691 F(2) (1995)).

■ It is settled law in Minnesota that an insurance policy should be construed as a whole, with all doubts concerning the meaning of language to be resolved in favor of the insured. *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977). Given that the Minnesota standard fire insurance policy must be broadly construed, *see Heim,* 147 Minn. at 288, 180 N.W. at 227, it is reasonable to interpret the statute as providing coverage for innocent co-insured spouses generally and prohibiting language which purports to deny coverage to innocent co-insured spouses. Accordingly, we conclude that the "intentional loss" provision in the USAA policy issued to Elizabeth and Keith Watson conflicts with the Minnesota standard fire insurance policy. We hold that, to the extent that USAA's policy purports to exclude innocent co-insured spouses from coverage, it must be reformed to comply with the Minnesota standard fire insurance policy.

### III.

■ USAA additionally argues that its insurance policy must be valid because the Commissioner of Commerce approved it. Minnesota Statutes section 65A.01, subdivision 1 does provide that approval of the commissioner is a prerequisite to the incorporation of additional or different terms into insurance policies. However, a provision in an insurance policy contrary to the Minnesota standard fire insurance policy cannot be permitted to stand even if the commissioner approved it. The commissioner is an administrative official with no power to alter the meaning and intention of the language of the legislature. *See Ponder,* 729 F.Supp. at 62. We conclude that USAA's argument lacks merit.

We remand to the district court for action in conformity with this opinion.

Affirmed.