*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1022**

In the Matter of the Appeal
by Pond Early Childhood Family Development Center
of the Order to Pay a Fine for Background Study Violation.

**Filed April 15, 2024**
**Reversed**
**Florey, Judge**[*]

Minnesota Department of Human Services
File No. 38034

Nancy Hylden, Hylden Advocacy & Law, Minneapolis, Minnesota (for relator Pond Early Childhood Family Development Center)

Keith Ellison, Attorney General, Morgan Alexander, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Human Services)

Considered and decided by Connolly, Presiding Judge; Bratvold, Judge; and Florey, Judge.

**NONPRECEDENTIAL OPINION**

**FLOREY**, Judge

In this administrative appeal, relator Pond Early Childhood Family Development Center (Pond) challenges an order by respondent Minnesota Department of Human Services (DHS) determining that Pond violated statutory background study requirements and imposing a fine. Pond argues that (1) DHS lacked statutory authority to remand the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

matter to the administrative law judge (ALJ); (2) DHS's finding of a violation is not supported by the record; and (3) DHS's fine is based on unlawful procedure. We conclude that DHS did not have authority to remand the case to the ALJ. Accordingly, the ALJ's May 24, 2022, report and recommendation to dismiss the case with prejudice and rescind the order to pay fine—the ALJ's first recommendation—is the binding decision in this matter. Based on this resolution of the case, we do not reach Pond's alternative arguments and reverse.

**FACTS**

Parents in Community Action (PICA) is a private non-profit organization that provides federal Head Start services to children in 14 licensed child-care centers throughout Hennepin County. Pond is a licensed child-care center operated by PICA. Pond consists of two classrooms located within a Bloomington Public School District elementary school. PICA works collaboratively with Bloomington Public Schools and permits school staff to provide special-education services to children served in the program at Pond.

In October 2021, a DHS child-care licensor conducted an unannounced annual visit to Pond. During the visit, the DHS licensor observed a Bloomington school district paraprofessional provide special-education services to a child in the program. Near the conclusion of her visit, the DHS licensor observed the paraprofessional take the child to the restroom without the supervision of a Pond employee.

Licensed child-care centers are required to have or initiate background studies on individuals who are affiliated with the licensed child-care center and who have unsupervised physical access to a child served by the program. *See* Minn. Stat. §§ 245A.04,

subd. 3 (2022) (requiring "individuals and organizations that are required under [Minnesota Statutes] section 245C.03 to have or initiate background studies" to "comply with the requirements in chapter 245C"), 245C.03, subd. 1(a)(8) (providing that the commissioner of DHS is required to conduct background studies on "*child care background study subjects* as defined in section 245C.02, subdivision 6a" (emphasis added)), 245C.02, subd. 6a(a)(8) (defining child-care background study subject) (Supp. 2023).

Before she left, the DHS licensor conducted an exit interview with three PICA employees. During the interview, the DHS licensor discussed several possible violations, but she did not discuss any possible background-study violations.

Following the visit, the DHS licensor contacted the PICA employees regarding the background-study status of the paraprofessional. After further investigation and communication with the PICA employees, the DHS licensor concluded that Pond had not initiated a background study for the paraprofessional as required by statute.[1]

In November 2021, DHS sent PICA an order to pay a fine for the asserted background-study violation. Pond appealed the order. A prehearing conference was held during which a contested hearing before an ALJ was scheduled. The prehearing order provided that the contested hearing would be in person and that failure to appear may result in default.

On the day of the contested hearing, DHS and its witness mistakenly attempted to appear virtually. When counsel for DHS realized the mistake, they attempted to contact the

---

[1] The DHS licensor was eventually provided with a background study for the paraprofessional that had been initiated by Bloomington Public School District.

3

ALJ and opposing counsel but were unsuccessful. At the hearing, the ALJ admitted Pond's six exhibits—which included, and did not contradict, DHS's investigation file—and Pond moved for default. DHS submitted a brief opposing Pond's motion, and a motion hearing was scheduled.

After the motion hearing, the ALJ issued a report and recommendation. The ALJ concluded that DHS was in default following the initial hearing and that he was required to recommend dismissal with prejudice. *See* Minn. R. 1400.8560 (2021) (providing that "[a] default occurs when a party fails to appear without the prior consent of the judge at . . . a hearing" and "[i]f the party against whom the agency intends to take action appears at a hearing, but the agency fails to appear, the administrative law judge shall recommend that the hearing be dismissed with prejudice").

The ALJ also concluded that DHS could not establish excusable neglect because DHS's claim—that Pond committed a background-study violation—lacked merit. The ALJ provided a detailed analysis supporting his legal conclusions about the merits of DHS's claim. Based on his conclusions, the ALJ recommended dismissal with prejudice and recission of the fine.

DHS timely filed its exceptions, and the parties presented oral arguments to a commissioner's panel. The record closed thereafter. *See* Minn. Stat. § 14.61, subd. 2 (2022) (stating that the contested-case record closes after the parties have presented argument). The commissioner issued a timely order concluding that DHS did not fail to appear and ordering the matter remanded to the ALJ for a contested hearing. The commissioner's order did not address the ALJ's legal conclusions about the merits of DHS's claim.

A contested hearing was held at which the DHS licensor and several PICA employees testified. The ALJ issued a second report concluding that Pond did not violate the applicable statute and that DHS's fine was based on unlawful procedure. The ALJ again recommended rescinding the fine. DHS appealed to the commissioner who subsequently issued an order affirming the order to pay fine.

Pond appeals from the commissioner's final order.

## DECISION

Pond argues that the commissioner's final order must be reversed because the commissioner exceeded its statutory authority by remanding to the ALJ, and therefore the ALJ's first report and recommendation is the final decision in this case.

When reviewing an agency decision, this court may under appropriate circumstances affirm, remand, reverse, or modify the agency's decision. Minn. Stat. § 14.69 (2022). Relevant to this appeal, we may reverse a decision that is "in excess of the statutory authority or jurisdiction of the agency." *Id.* "Whether an administrative agency has acted within its statutory authority is a question of law that [appellate courts] review de novo." *In re Hubbard*, 778 N.W.2d 313, 318 (Minn. 2010).

"Unless otherwise provided by law, the report or order of the administrative law judge constitutes the final decision in the case *unless the agency modifies or rejects it* under subdivision 1 within 90 days after the record of the proceeding closes under section 14.61." Minn. Stat. § 14.62, subd. 2a (2022) (emphasis added). Pond argues, for the first time on appeal, that the ALJ's first recommendation is the final decision in this case because the commissioner's order remanding the matter back to the ALJ was not a proper modification

5

or rejection of the ALJ's recommendation under *In re Surveillance & Integrity Review (SIRS)*, 996 N.W.2d 178 (Minn. 2023).

First, we recognize that appellate courts generally will not consider matters not argued to and considered by the lower court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But this court may consider an issue that is plainly decisive of the case where the lack of a lower court ruling will not cause an advantage or disadvantage to either party. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997).

Here, the entire case can be resolved by addressing Pond's argument that DHS did not have statutory authority to remand. Further, because this is a question of law subject to de novo review, and the underlying facts are not in dispute, the lack of a ruling on this issue from the ALJ and the commissioner does not advantage or disadvantage either party. We therefore conclude that addressing Pond's argument is an appropriate exercise of this court's discretion.

We next turn to the substance of Pond's argument. In *SIRS*, the Minnesota Supreme Court clearly stated:

> We . . . conclude that section 14.62, subdivision 2a, provides the agency with three options after receiving the ALJ's report with recommendation: to accept the ALJ's report as the agency's final decision; to "modif[y]" the ALJ's report; or to "reject" the ALJ's report. A remand is not a rejection. The option to remand is not permitted.

996 N.W.2d at 187. Accordingly, the supreme court held that the ALJ's initial recommendation was the final decision in the case. *Id.* at 184.

6

Applying *SIRS*, we conclude that DHS exceeded the scope of its statutory authority by remanding the matter to the ALJ after the ALJ issued a report and recommendation and the record had closed.

DHS argues that *SIRS* is not applicable because, unlike in the case at hand, the commissioner in *SIRS* remanded after a contested evidentiary hearing had already been held. We are not persuaded that this distinction compels a different outcome.

The ALJ's recommendation here was based on legal conclusions and an uncontested factual record, which closed after the parties presented oral argument to the commissioner's panel. The ALJ recommended that the case be dismissed with prejudice and the fine be rescinded for two separate reasons: (1) DHS was in default, and its default required such a recommendation; and (2) DHS's claim lacked merit. The commissioner knew the ALJ's legal conclusion on not only whether DHS was in default, but whether Pond committed a background-study violation. And the commissioner had the power to review the uncontested factual record in considering the ALJ's recommendation.[2] *See* Minn. Stat. §§ 14.62, subd. 1(a) ("Every decision and order rendered by an agency in a contested case shall be in writing, shall be based on the record and shall include the agency's findings of fact and conclusions on all material issues."), 14.60, subd. 2 ("All evidence . . . in the

---

[2] During oral argument presented to the commissioner's panel, the panel asked DHS why the commissioner should remand for a hearing on the merits when the ALJ's position on the merits was known. Counsel for DHS admitted that the commissioner did not need to remand the matter because the commissioner had authority to review all matters before it de novo and that it could review the record as it existed and make an independent judgment. Nonetheless, DHS requested remand so that the matter could be tried in front of the ALJ on the merits.

7

possession of the agency of which it desires to avail itself or which is offered into evidence by a party to a contested case proceeding, shall be made a part of the hearing record of the case.") (2022). Based on these circumstances, the commissioner here was in essentially the same position as the commissioner in *SIRS* even though the contested hearing was not held before the commissioner remanded to the ALJ.

After the ALJ issued the initial report and recommendation and the record was closed, DHS did not have authority to order the matter remanded to the ALJ. Accordingly, the ALJ's initial recommendation to dismiss with prejudice and rescind the fine is the final decision in this case. Based on this resolution of the case, we need not reach Pond's remaining arguments.

**Reversed.**